**MIGUEZ v. MIGUEZ.**

No. 4596.

Court of Civil Appeals of Texas. Beaumont.

April 20, 1949.

Rehearing Denied June 15, 1949.

Xavier Christ, B. C. Johnson, Port Arthur, for appellant.

A. A. De Lee, Port Arthur, for appellee.

MURRAY, Justice.

The appellant, Neville Miguez, individually and as independent executor of the will of Laura Amy Miguez, deceased, his mother, brought suit in the district court of Jefferson County, against W. L. Miguez, the appellee, his brother, to recover real and personal property alleged to be the property of the deceased at and before her death and alleged to be in the possession of appellee. The petition alleged that appellee began asserting and claiming title to the real and personal property by virtue of a deed to him by deceased; that such deed should be cancelled, annulled and set aside on the grounds, as alleged, that the deceased was without mental capacity to understand the nature of her act or to comprehend the effects of such action, both at the time of the execution, acknowledgment, and delivery of such deed; that no consideration actually passed for such deed; that appellee knew of her condition at the time he secured such deed and that his action in so doing under such circumstances amounted to a fraud upon the rights of appellant.

The parties have stipulated that the answer of appellee consisted of a general denial.

The case was tried to a jury and the court submitted only three special issues to the jury in its charge. These three issues inquired whether the jury found from the preponderance of the evidence (1) that the deceased, at the time of the execution of the deed, was without mental capacity to understand that she was thereby conveying to appellee all of the property described in such deed; (2) that at the time she signed the deed by mark, she was without mental capacity to understand that she was thereby acknowledging a conveyance of the land described in such deed; and (3) that she delivered such deed when she was without sufficient mental capacity to know and understand that she was thereby conveying to the appellee all of the property described in such deed. The jury in its verdict answered "we do not" to each of such special issues. On such verdict the court rendered judgment in favor of the appellee, from which judgment appellant as independent executor has perfected his appeal.

The deceased, Laura Amy Miguez, died in Jefferson County on January 20, 1947, at the age of 82 years. She died in the home of W. L. Miguez, the appellee, her son. She became the owner of the real property which is the subject of this suit in 1938. By her will dated January 15, 1944, the appellant Neville Miguez was made Independent Executor and sole beneficiary. On December 10, 1946, about six weeks before her death, she executed a deed to the property in question to the appellee, W. L. Miguez. By the pleadings of the appellant the issue as to the capacity of the deceased to execute the deed to the appellee was squarely raised and by the court's charge this question was presented to the jury.

By his first Point of Error, the appellant complains of the action of the trial court in sustaining the objections of appellee to certain tendered testimony of appellant's witnesses, Israel Miguez, Mrs. Israel Miguez and S. C. Pritchett. George Miguez, a son of the deceased, died sometime in 1945 or 1946. While the witness Israel Miguez, another son of the deceased, was testifying in behalf of the appellant, he was asked the question whether he noticed any difference in the thoughts, conversations, actions and movements of deceased, prior to George's death and subsequent to George's death. The trial court sustained appellee's objection, which was that the answer to such a question would permit the witness to give an opinion which would invade the province of the jury. A few moments later the witness was asked to describe the condition of the deceased at the time she was living at his house, before she went to live with the appellee at his home. The witness said that she was sick, that he had the doctor with her a week before she went to appellee's home and he had called in Dr. Garrison. The

question was then asked "can you describe her actions or conduct at that time?" The court sustained appellee's objection to this question. The witness was then asked the question with reference to her sickness, "whether she was desperately ill or able to know and get about and know what she was doing"—An objection was interposed by appellee and sustained by the court. He was later asked whether there was any difference in deceased's ability to remember before George's death and after George's death. The appellee's objection that the question called for an opinion was sustained. When the witness Mrs. Israel Miguez was testifying in behalf of appellant the question was asked by appellant to "tell the jury what she would do or not do; describe to the court and jury here her acts and conduct prior to George's death and describe her acts and conduct, what she saw, subsequent to George's death and up to the time of her death, please." The trial court sustained the objection of appellee. When the witness attempted to relate that the deceased wanted to come with the witness from the house of a Mrs. Frederick and testified that the deceased said that "she wouldn't stay in town very much, she would walk first," appellee objected that such statements were hearsay and the trial court sustained the objection. When asked whether the deceased had made any statements about any of her children or who she was the mother of, the witness answered—yes, sir. The appellee objected to such conversation on the part of the deceased as hearsay. The trial court sustained this objection. When asked about the conversation that witness had with the deceased at W. L. Miguez's house, the witness testified that "she told me she couldn't go back with me, that Louis would not let her go back with me." Appellee objected on the ground that such statement was hearsay. The trial court remarked to counsel that it was hearsay and the objection was sustained. When the witness, S. C. Pritchett, was testifying in behalf of appellant, he testified that he lived about 150 feet away from the property involved in this suit; that he was well acquainted with deceased and had known her since 1933.

When he was asked the question whether he saw any difference in the deceased's actions, movements, talk or conduct before the death of her son George and afterwards, the appellee objected on the ground that the question called for a conclusion and opinion of the witness, and the trial court sustained the objection.

The basic fact sought to be established by the appellant was the lack of mental capacity of the deceased to execute, acknowledge and deliver the deed to the appellee, at the time she executed, acknowledged and delivered it. Mental capacity, like other human qualities or conditions, may conceivably be evidenced circumstantially by three classes of facts: (1) The person's outward conduct, manifesting the inward and causing condition; (2) pre-existing external circumstances, tending to produce a special mental condition; and (3) the prior or subsequent existence of the condition, from which its existence at the time in question may be inferred. Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of normality. The mode of operation of the mind is ascertainable from the conduct of the person in question, that is, from the effect produced by his surroundings on his mind when responding by action to those surroundings. Virtually then, the mind is one, while the surroundings are multifold; and the mode of operation cannot be ascertained to be normal or abnormal except by watching the effects through a multifold series of causes. On the one hand, no single act can be of itself decisive, while, on the other hand, any act whatever may be significant to some extent. The first and fundamental rule, then, would be that any and all conduct of the person whose mental capacity is questioned is admissible in evidence. There is no restriction as to the mind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue. There can be no escape from this consequence. There is no distinction in kind (whatever there may be in degree) between one or another piece of conduct as

evidence to be considered; some inference is always possible. Courts occasionally exclude this or that piece of conduct from evidence, but such rulings are explainable usually as refusals to allow an incorrect impression to be given to the jury that the specific conduct raises a presumption of insanity, or has special weight in that direction. In the foregoing sort of evidence the hearsay rule forms no objection to admitting communications of third persons or of the person himself whose sanity is in question. Such utterances are not received as testimonial assertions by him to prove the facts asserted, but as indicating circumstantially the operations of his mind. Wigmore on Evidence, 3rd Edition, Vol. 2, paragraph 227, et seq.

■■ The rule is now well settled that where a lay witness has had sufficient opportunity through personal contacts, conversations, association with and observation of the person in question reasonably to form an intelligent opinion as to such person's sanity, based upon his own first hand knowledge, he is qualified to express such an opinion. See: Santos v. Morgan, Tex. Civ.App., 195 S.W.2d 927 and cases cited. While in any proceeding involving a question of mental condition, the proof must be directed to the condition as it existed at a particular time, such condition at such time may be proved by evidence of the state of the person's mind at other and especially at prior times. Fulcher et al. v. Young, Tex. Civ.App., 189 S.W.2d 28.

■ Applying these principles of law to the present case, we believe the learned trial court was in error in excluding from the evidence the testimony tendered by the appellant. It would have been proper for the witnesses to testify in regard to all of the acts, conduct, conversations and statements of the deceased as they observed them. Such a witness, having made such observations, would then be qualified to testify as to his opinion if he had formed one, as to the mental condition and capacity of the deceased at the time he made the observation. To do so would not invade the province of the jury, whose duty it was to decide whether the deceased was without mental capacity at the time she executed, acknowledged and delivered the deed in question. By testimony introduced in the absence of the jury, the appellant has shown what the answers of the witnesses would have been. In most instances the answers would have been as to conduct or statements on the part of the deceased which were material to appellant's case. The appellant's first point is sustained.

■ The second point of appellant presents no error. He complains of the action of the trial court in not granting counsel for appellant sufficient time within which to make objections and state exceptions into the record. This was a matter under the control of the trial court, and no harm is shown to have resulted to the appellant from any action of the trial court in this respect.

Appellant's third point complains of the following occurrence upon the trial of the case:

■ While the appellee was presenting testimony to the court and after he introduced approximately 14 witnesses, the trial court asked counsel for appellee, in substance, "how many more witnesses do you have?" to which counsel responded substantially, "about forty—I have the hall full out there." The court then permitted eight witnesses to be brought into the courtroom and counsel for appellee stated in substance: "These witnesses will all testify along the same line with those who have already testified, and I tender them to counsel to ask them any questions he may desire." The appellant objected to such proceeding. Appellant made no motion for mis-trial because of the occurrence. We agree with the appellant that such a proceeding was highly irregular and may have resulted in some harm to the appellant. In the absence of some showing of harm to appellant, we do not believe this is in itself reversible error. The procedure is not sanctioned, however, and doubtless on another trial it will not occur. Appellee, by his cross assignment of error, points out that the bill of exceptions which detailed the above occurrence was signed by the trial judge without first submitting it to appellee's counsel.

The bill of exception as signed differs in some respects from the court reporter's transcript of the proceedings, but such transcript of the testimony in the statement of facts supports the statement that substantially such a proceeding took place as that detailed in the bill of exceptions and set out above.

By his 4th point the appellant complains of the action of the trial court in allowing and permitting certain witnesses, testifying for the appellee, to testify as to their opinions regarding the mental capacity of the deceased. In keeping with the discussion of this question under appellant's first point, we believe no error is shown by this point.

■ Appellant's 5th point is not briefed by appellant, and we deem it to be waived by him.

■ Appellant's 6th and 7th points complain of the action of the trial court in refusing to submit to the jury his special requested issues Nos. 5 and 6, which requested a finding upon the value of the personal property belonging to the deceased at the time of her death and as to the amount of cash money she had at her death. We do not believe the evidence in the case raises such issues, and the trial court did not err in refusing to submit them in the charge.

■ Appellant's 8th point is that the trial court "erred in rendering a take-nothing judgment against him as to all relief sought, whereas a matter of law under the evidence he is entitled to a portion of such relief." This point is too general to require consideration, but we have examined it and do not believe that it presents error. There was no evidence showing the value of the personal property left in the home of the appellant at the time of the death of the deceased, nor has any evidence been pointed out to us which indicated that the appellee has in his possession any money or other personal property rightfully belonging to the appellant as executor of the will of the deceased.

For the errors pointed out in excluding the tendered testimony of the appellant's witnesses, the judgment of the trial court is reversed and the cause is remanded for a new trial.