Henry GASTON et al., Appellants,

v.

Ida Gaston BRUTON et al., Appellees.

No. 5520.

Court of Civil Appeals of Texas.

El Paso.

May 30, 1962.

Rehearing Denied June 20, 1962.

Copeland & Clayton, Brownfield, for appellants.

New & Townes, Denver City, for appellees.

CLAYTON, Justice.

This is a suit brought by appellees in the District Court of Gaines County, Texas, against appellants in which the latter, after an adverse judgment, appealed. All parties are heirs of Nancy A. Gaston, who died in Brownfield, Terry County, Texas, on April 27, 1959 at the age of ninety-one years. The deceased ancestor left a holographic will dated September 14, 1955 which merely disposed of her money in certain bank accounts to be divided among her heirs and which named her daughter, Ida Bruton, "executrix without bond". The daughter failed to qualify and a son, Henry Gaston, one of the defendants, was appointed administrator. The will made no disposition of any real estate, and administration was still pending at the time of this suit.

Plaintiffs' first amended original petition had alternate pleas: the first alleging trespass to try title in statutory form, and the second alleging that all parties to the suit were heirs of Nancy A. Gaston, setting out their respective undivided interests in her estate, and seeking to set aside a deed purportedly executed by the ancestor to the defendants on July 13, 1955 covering a parcel of land in Gaines County, Texas. The alternate plea alleges that this deed was not executed by the said Nancy A. Gaston "as her own free will and act and deed", but that if she did sign such deed, she did not have at the time of its execution sufficient mental capacity to execute the same or to understand the nature and effect of such act.

Appellants answered this petition by pleading not guilty in the trespass to try title, and by specific denial of the allegations in the alternate plea. No plea in abatement, or motions or special exceptions contemplated by Rules 85 and 90, Texas Rules of Civil Procedure, were advanced in the answer.

The case was tried to a jury, and after appellees had presented their case in main and rested, appellants moved to dismiss the cause in so far as it related to trespass to try title on the grounds that "during the trial it developed that the cause of action in Trespass to Try Title is one in which assets are involved which may be decreed a part of the estate of Nancy A. Gaston, deceased" and that "it is necessary as a jurisdictional matter for Plaintiffs to prove that no administration is pending and that none is necessary" concerning said estate, and that plaintiffs had failed to so prove. This motion was overruled.

The charge to the jury contained two special issues accompanied by appropriate definitions of "preponderance of the evidence" and "mental capacity". These special issues were:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that on the 13th day of July, 1955, at the time the deed here in question was executed, that Nancy A. Gaston did not have sufficient mental capacity to know and understand the nature and effect of her act in executing the deed in question?";

to which the jury replied, "She did not have sufficient mental capacity."

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the defendants in this cause, at the time the deed was executed, knew that Nancy A. Gaston did not have sufficient mental capacity to know and understand the nature and effect of her act in executing the deed in question?"

to which the jury replied in the affirmative.

Upon such findings of the jury the court entered judgment for appellees setting aside the ancestor's deed and dividing the ownership of the property involved among the heirs of Nancy A. Gaston by setting out the undivided interest therein of each heir. The judgment recited that each undivided interest was subject to the claims and de-

mands of any creditors of the ancestor's estate, and further subject to any liens, encumbrances or debts of record against the property.

■ The appellants urged seven points of error. In Points 1, 2 and 3 appellants maintain that the trial court committed fundamental error in entering judgment for appellees when suit was brought by heirs to recover property allegedly belonging to the estate of their ancestor within the four-year period allowed by law for taking out administration without pleading and proving that no administration was pending upon the estate and that none was necessary, the court having no jurisdiction of the matter without such pleading and proof. For the first time in their motion to dismiss after appellees had rested, appellants brought to the attention of the trial court that the action was partly in trespass to try title in statutory form and that in so far as the action so pertained it should be dismissed because of lack of *proof* that no administration was pending and that none was necessary. This motion was overruled and the action of the court was cited as error in appellants' amended motion for new trial. The alleged defect in *pleading* was brought out for the first time in appellants' brief on appeal.

There was neither such pleading nor proof; on the contrary, the testimony showed that administration had been taken out on the estate and was still pending at the time suit was brought. Appellees' amended petition contained, in addition to the statutory form of pleading in trespass to try title which did not refer to the parties as heirs of the ancestor, an alternate plea to set aside the deed of the ancestor in which it was alleged that all of the parties to the suit were heirs of Nancy A. Gaston, deceased.

Appellants, in support of their contention on appeal that the cause should have been dismissed because of the lack of pleading and proof that no administration was pending and that none was necessary, rely upon Pure Oil Co. v. Tunnell et al., 126 Tex. 57, 86 S.W.2d 207 (1935); Youngs v. Youngs, 26 S.W.2d 191 (Comm.App.1930), and earlier cases. The Youngs case set out the general rule of law in Texas regarding this issue as of the time the decision in that case was rendered, as follows:

"We think it is a settled law of this state that before heirs, as such, can maintain a suit to recover a chose in action or other property which has descended to them, within the period allowed by law for the taking out of an administration, they must plead and prove facts entitling them to prosecute the action, and, in the event that the suit is brought within the four-year period allowed by law for an administration, they must plead and prove that there is no administration pending and none necessary. A petition that fails to affirmatively allege these facts is fatally defective and subject to a general demurrer."

The Pure Oil Company case, however, after referring to the general rule as recited in the Youngs case, modified this rule by stating that:

"In so far, however, as the matter of pleading is concerned, the rule is not applicable to a petition in trespass to try title which does not disclose on its face the fact that the claimants sue as heirs. Article 7366 of the statutes regulates the averments of petitions in trespass to try title. A petition of this sort which alleges nothing more than the statute prescribes is legally sufficient. Bridges v. Cundiff, 45 Tex. 440. In the present instance the petition of the interveners simply follows the statute. It was incumbent on them, however, to show by testimony that no administration of the estate of Mrs. Tunnell is pending and none is necessary."

See also Olsan Bros. et al. v. Miller et al., 108 S.W.2d 856 (Civ.App.1937).

Further, as regards the matter of pleading, Izard v. Townsend et al., 208 S.W.2d 666 (Civ.App.1948), holds as follows:

"It has, we believe, never been held that the courts were without *jurisdiction* to render judgment in a suit brought by heirs, as such, merely because they did not allege there was no necessity for administration on their ancestor's estate. At most such a petition was but subject to a general demurrer, as appears from Youngs v. Youngs, supra. Indeed, in the case of Fowler v. Roden, 129 Tex. 599, 105 S.W.2d 187, 189, the contention was made that the judgment rendered therein was void because the court was without jurisdiction to render judgment where the suit was by the heirs as such, and there was no allegation that there was no necessity for administration. In that case the court held: 'In the absence of a plea in abatement, or special exceptions * * * the trial court had jurisdiction to render the judgment in question against her.'

"But general demurrers have been abrogated in our practice by the adoption of Rule 90, Texas Rules of Civil Procedure. This Court held in Texas Osage Co-op. Royalty Pool v. Kemper, Tex.Civ.App., 170 S.W.2d 849, 852, writ refused, speaking through Chief Justice Monteith, that Rule 90 'indicates an intent on the part of the rule makers and the State Legislature to simplify our trial procedure by providing that defects of form or substance in a pleading will be deemed to have been waived where they have not been raised by exception or objection in the trial court.' We do not see how defendant can now raise any objection to the pleadings which by law he must be taken to have waived in the trial court. In a word, in order to invoke the rule stated in Youngs v. Youngs, under our present practice rules, defendant should have urged his objections to plaintiffs' pleadings as being insufficient in the trial court."

See also O'Connell et al. v. Scott, 241 S.W. 2d 967, ¶1 (Civ.App.1951).

A restatement and clarification of Texas decisions on this subject appears in Dutchover v. Dutchover, 334 S.W.2d 569 (Civ. App.1960), in which this court states:

"An examination of appellants' pleadings reflects that the action in trespass to try title was framed in the formal manner authorized by Rule 783, Texas Rules of Civil Procedure. We believe the law in Texas is well settled that the plaintiff in a trespass to try title suit is not required to allege facts which show his right to sue, even though the action is one which seeks to affect assets of a decedent brought by or against the heirs within four years of the death, and it is not necessary, in a formal petition, to allege that there is no administration or need therefor, provided the pleading does not, on its face, show that the parties are heirs. Pure Oil Co. v. Tunnell, 126 Tex. 57, 86 S.W.2d 207; Fowler v. Roden, 129 Tex. 599, 105 S.W.2d 187; Antone v. Stiles, Tex.Civ.App., 177 S. W.2d 246.

\* \* \* \* \* \*

"We do not agree with appellees' contention that the plaintiffs' petition, in a strictly formal trespass to try title action, must contain an allegation that no administration was pending upon the estate of the deceased and none was necessary. If, during the trial, however, it develops, as it has here, that the cause of action is one involving assets which may be decreed a part of a decedent's estate, it then becomes necessary, as a jurisdictional matter, for the plaintiff to prove that no administration is pending and none is necessary. This, the appellants failed to do, and, in the absence of such proof, the only proper judgment to be entered

by the trial court was the order of dismissal, and this was done. Wilson v. Wilson, Tex.Civ.App., 216 S.W.2d 684."

But if it be said that in the instant case, upon an examination of the pleadings as a whole, it appears that the appellees are suing as heirs and the testimony discloses that the cause of action is one involving assets which may be decreed a part of the decedent's estate, there nevertheless exists in our law authority for holding that this suit was properly brought.

As pointed out in Izard v. Townsend, supra, there are certain exceptions to the general rule which are as well settled as the rule itself. One of these exceptions is where the representative of the estate has an interest adverse to the estate. 19 Tex. Jur.2d ¶958, pps. 12, 13. The Supreme Court, in Chandler et al. v. Welborn et al., 156 Tex. 312, 294 S.W.2d 801 (1956) refers with approval to the court of civil appeals opinion in Gannaway v. Barrera et al., 74 S.W.2d 717, in which the latter court held that:

"Other exceptions to the general rule exist in cases where, there being an administration, it appears that the administrator will not or cannot act, or that his interest is antagonistic to that of the heirs desiring to sue. Rogers v. Kennard, supra [54 Tex. 37]; Lee v. Turner, 71 Tex. [264,] 266, 9 S.W. [149,] 150; Modern Woodmen v. Yanowsky (Tex.Civ.App.) 187 S.W. 728."

True, the Gannaway case went off on sufficiency of the pleadings, but in this respect we feel that the rulings in Pure Oil Co. v. Tunnell, supra, and Izard v. Townsend, supra, taken together, are presently controlling in so far as pleadings are concerned. Where the evidence establishes an adverse claim of the administrator to the claimants bringing the suit to determine title to real estate, as in the instant case, the district court is the proper forum to hear such suit. Higginbotham v. Davis, 221 S.W.2d 290 (Civ.App.1949); Jordan v. Garcia, 197 S.W.2d 873 (Civ.App.1946).

The pleading and the testimony in the case before us adequately establish that the interest of the administrator, Henry Gaston, one of the defendants and one of the grantees in the ancestor's deed under attack, was antagonistic to that of the heirs bringing this suit. We hold that under the circumstances the case comes within the purview of the cited exception to the general rule, that the trial court had jurisdiction to render judgment in this case, and that no fundamental error is shown. Appellants' Points of Error 1, 2 and 3 are accordingly overruled.

■■ Appellants' Point 4 cites error in rendering judgment adverse to the appellants for the reason that the evidence is insufficient to support the jury finding on Special Issue No. 1 that the ancestor was lacking in mental capacity to know and understand the nature and effect of her act in executing the deed in question. This point raises a question of fact and requires this court to review *all* the evidence, both that which supports the verdict and that which does not. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815 (S.Ct.1959). In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (S.Ct.1951). Under this rule the verdict of the jury is to be set aside and the case remanded if it is thus concluded that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.

The testimony of some twenty-five witnesses occupies 510 pages of the Statement of Facts. Nineteen exhibits are attached to some 16 additional pages. Two of the three appellants testified at some length. The entire Statement of Facts has been carefully read in full and reviewed in the light of this point of error and Points 5 and 6 claiming no evidence and insufficient evidence to show that appellants knew of the mental incapacity of their ancestor.

Nancy A. Gaston, the ancestor, was 87 years of age at the time the questioned deed was executed by her on July 13, 1955. On the day of its execution she was taken by her son, Fancher J. Gaston, one of the appellants and a grantee in the deed, to a notary public (not a lawyer) who drew up the deed and who took the acknowledgment of the ancestor after she had signed it. The instrument was not read by the ancestor, but was read to her by the notary public. The ancestor *continued to pay the taxes on the Gaines County land described in the deed* until her death on April 27, 1959. On February 17, 1958 the same notary public took the acknowledgment of the ancestor as Lessor (Party of the First Part) on a grazing lease on this same land to one Minnix, the lease to run for a primary term of five years from January 1, 1958. This lease contained the following provision:

"It is further agreed that should First Party *sell said land and premises or otherwise dispose of the same,* or any part thereof, during the life of this contract, then such party, or parties, acquiring the title thereto, may avail themselves of the option hereby given the said party of the first part." (Emphasis supplied).

One John Derryberry (not a party to this suit and not related to any of the parties, but a friend of the family) testified that he had visited and talked with the ancestor frequently just before her death in 1959, and that either on the last visit, about a month or six weeks before her death, or on the next previous visit, she had said that she had *disposed of all her property except the property in Gaines County.*

Without attempting to recount the testimony offered by the great number of witnesses for appellees and appellants on the issue of mental incapacity of the ancestor at the time of the execution of the disputed deed, suffice it to say that in large measure the testimony of appellees' witnesses sought to establish that the ancestor (grantor) was old and feeble; that she would often cry without apparent reason; that she had become unnaturally suspicious and critical; that at times she failed to recognize friends or relatives and would call such persons by a wrong name; that she had deteriorated after her husband's death in 1952 and was vexed with inheritance tax problems thereafter; that subsequent to the execution of the deed on July 13, 1955 she exercised acts of ownership over the property conveyed, and asserted that she still owned it.

On the other hand, appellants' witnesses contradicted these evidences of mental deterioration and incapacity and maintained that the mind of the grantor remained sound until the time of her death, and that her behavior and memory were normal.

■ No witnesses testified that the ancestor did not understand the nature and effect of her action in executing the deed, nor would they properly have been permitted to do so, since this was the ultimate issue for the jury to determine. But relevant evidence bearing on mental competency is not restricted to the time a given act is done; that issue may be determined upon testimony as to the actor's mental condition prior to or subsequent to the time the act in question is done. Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 (1952).

■ We are not prepared to say that the admissible testimony shows that the verdict of the jury in the case before us is "so against the great weight and preponderance of the evidence as to be manifestly unjust." The jurors had the witnesses before them and could judge from their appearance and manner of testifying just what credence should be given their testimony. It is trite to expound on the exclusive right of the jury to determine what weight should be given the testimony of the individual witnesses. The jurors may believe a witness although he has been contradicted. They may accept part of the testimony of a witness and disregard the remainder of such

testimony, or believe one witness and reject the testimony of another. It is our belief that the jury's verdict on Point 4 has ample support in the testimony and it follows, therefore, that Point 4 must be overruled.

■■ Points 5 and 6 set out that there is no evidence, and insufficient evidence, to show that appellants knew of the mental incapacity of their ancestor, the question submitted in Special Issue No. 2 and answered in the affirmative. Point 5, the "no evidence" point, presents a question of law of which consideration by this court is limited to a determination of whether there was any evidence to support the jury's finding that appellants were aware of their ancestor's lack of sufficient mental capacity to know and understand the nature and effect of her act in executing the deed in question. In passing upon this law question "it is the duty of the courts to view the evidence in the light most favorable to the verdict, considering only that evidence which is favorable to or supports the verdict, and to disregard entirely all evidence which is contrary, adverse or conflicting to the favorable evidence." In re Olsson's Estate, 344 S.W.2d 171 (Civ.App.1961), citing Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114.

Even under this restricted view of the evidence we do not find anything, circumstantially or otherwise, upon which the jury could base their finding that appellants knew that their ancestor was mentally incapacitated when she executed the questioned deed. They may have had the *opportunity* to form such a conclusion from contact with the ancestor and observation of her talk and behavior, but there is no evidence that they *did* form such a conclusion. Certainly if there is "no evidence" to support the jury's finding on this issue, there is "insufficient evidence" to do so.

But we feel that Special Issue No. 2, the jury's finding on which is attacked in appellants' Points 5 and 6, need not have been submitted to the jury under the facts of this case. In the first place we are unable to find that there is any evidence to require its submission; and secondly, that were there any such evidence, however the jury answered this issue would not have been decisive of any matter material to this case. We conceive the law to be that if the ancestor was not mentally capable of making the conveyance sought to be set aside, the heirs would be entitled to have the conveyance set aside in a direct attack thereon, as in this case. Harrison v. Davis, 58 S.W.2d 1025 (Civ.App.1933, err. dism.). We believe this to be the law regardless of whether the grantee knew of the mental incapacity of the ancestor. In so far as we have been able to determine, the only occasions when knowledge by the grantee of grantor's disability to make a binding contract is considered material is where there is sought to be established a constructive fraud on the grantor, as in Rattner v. Kleiman, 36 S.W. 2d 249 (Civ.App.1931, no wr. hist.), and Branton v. Inks, 149 S.W.2d 667 (Civ.App. 1941, err. dism., judgm. corr.).

So, while we find that appellants' Points 5 and 6 should probably be sustained, we further find that they reflect no reversible error.

■ Appellants' Point No. 7 complains of the refusal of the trial court to admit into evidence the deposition of one J. C. Gaston, a grandson of the ancestor, Nancy A. Gaston. An examination of this deposition, which was taken at the instance of appellants and by them attached as an exhibit to the Statement of Facts, reveals that it is merely cumulative of the great volume of testimony as to the mental condition of the ancestor. It does not appear that J. C. Gaston was in any better position to observe the ancestor or to form an opinion as to her mental capacity than any of the numerous other witnesses who testified on this point. We do not feel it necessary to pass on the admissibility of this deposition, since if it was error to exclude it, the error was

harmless. Rule 434, Texas Rules of Civil Procedure and cases there noted.

Finding no error in this record requiring the reversal of the judgment of the trial court, that judgment is hereby in all things affirmed.