**Walter J. BACH, Jr., Administrator of the Estate of Walter J. Bach, Sr., Deceased, Appellant,**

**v.**

**A. R. HUDSON, Appellee.**

**No. 1465.**

Court of Civil Appeals of Texas, Corpus Christi.

March 13, 1980.

Rehearing Denied April 3, 1980.

Clarence Kendall, Sowell, Ogg, Capps & Kendall, Houston, for appellant.

Richard C. Smith, Edinburg, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit to enforce an earnest money contract for the sale of certain realty located in Hidalgo County, Texas. The purchaser, A. R. Hudson, sued the seller, Walter J. Bach, Sr., for specific performance. Bach died. Upon his death, the administrator of his estate, Dr. Walter J. Bach, Jr., intervened and defended the cause thereafter. The case was tried before a jury which answered special issues in plaintiff's favor. Thereafter, the trial judge entered a judgment ordering the administrator of the estate to convey the subject realty. The administrator perfected this appeal.

The record indicates that appellee as purchaser, and Bach as seller, executed the

contract in question on July 26, 1973, in the office of Bach's attorney. Under the terms of the contract, Bach agreed to sell and convey to Hudson all of "Farm Tract 385, and the North 20 acres of Farm Tract 336, West Tract Subdivision in Hidalgo County, Texas," including all of the minerals owned by him. The contract was subject to any oil and gas leases of record. Later, Bach refused to consummate the sale. The primary dispute during the course of the trial concerned Bach's mental capacity to execute the contract.

Appellee stated that he first met Bach in the spring of 1973 when he stopped at Bach's home to present an insurance proposal. He then learned that Bach had some real estate and, after examining several pieces of property, appellee offered to buy the land in question from Bach. Bach agreed. Bach's attorney, who drafted the contract, testified that Bach and Hudson came into his office together to have the contract of sale drawn up. He stated that "they gave me the information and the substance of their agreement, which I put into this contract and they signed it, as I recall. There was very little—Not a whole lot of discussion about it." The attorney stated in substance that the parties to the contract apparently had completed "all that haggling" prior to the time they came into his office and that he generally did not invite discussion on "deals" if "they are together," except to insure that an agreement had been reached on the terms.

The administrator of the decedent's estate, one of the decedent's sons, testified that the condition of his father came to his attention first in 1968, when Bach had executed a deed for a piece of property without receiving any consideration. He stated that such deed was later set aside in a suit. Thereafter, the administrator stated that he tried to pay more attention to the conversations he had with his father and to his father's business deals. The administrator, who lived in Houston, testified that he conversed with his father by way of telephone and noted that his father "seemed to ramble," and would forget people and recent occurrences. He stated that his father

would "get confused with details," and that he was not current or knowledgeable in values. He further testified that his father would talk to a fruit buyer and quote a price, then a few minutes afterward, he would not recall what the quoted value was. The administrator stated that at other times his father "was fine" and "to some degree" was able to negotiate his own business deals and take care of himself.

Several long-time acquaintances of Bach presented detailed testimony concerning his mental condition. The substance of this testimony was to the effect that Bach's appearance and physical health had degenerated, that he could not always remember friends or acquaintances or other details of recent occurrences, and that he made erratic and irrational decisions concerning sales of fruit and of agricultural conditions.

Both parties presented evidence relevant to the state of mind and mental capacity of Bach. It will suffice for us to say that the evidence on the mental capacity of Bach was conflicting. The evidence, when viewed in its most favorable light, would have been sufficient to uphold a jury finding either way. The real issue here on appeal is whether certain excluded evidence caused or probably caused the rendition of an improper judgment. Rule 434, T.R.C.P.

■ Appellant brings forward seven points of error which complain of the trial judge's actions in admitting and excluding evidence. In considering these points of error, we shall keep in mind the general rules pertaining to the legal definition of mental capacity which is necessary to support a binding contract and the rules pertaining to the admissibility of evidence relevant to proving lack of the requisite mental capacity. The legal standards for determining the existence of mental capacity for the purposes of executing a will or deed are substantially the same as the mental capacity for executing a contract: i. e., Bach had the requisite mental capacity to execute the contract in question if he appreciated the effect of what he was doing and understood the nature and consequences of his acts and

the business he was transacting. See *Mandell & Wright v. Thomas,* 441 S.W.2d 841, 845 (Tex.Sup.1969) (will). Compare *Pollard v. El Paso National Bank,* 343 S.W.2d 909 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.) (deed); and *Mandell & Wright v. Thomas,* 441 S.W.2d 841 (Tex.Sup.1969) (contract).

■ Mental capacity may be evidenced circumstantially by facts that would show: (1) a person's outward conduct, manifesting an inward and causing condition; (2) pre-existing external circumstances tending to produce a special mental condition; and (3) prior or subsequent existence of a mental condition from which its existence at the time in question may be inferred. *Rodriguez v. Garcia,* 519 S.W.2d 908, 911 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Miguez v. Miguez,* 221 S.W.2d 293 (Tex.Civ.App.—Beaumont 1949, no writ). See also *Cole v. Waite,* 151 Tex. 175, 246 S.W.2d 849 (1952); *Jackson v. Henninger,* 482 S.W.2d 323 (Tex.Civ.App.—Austin 1972, no writ); *Gaston v. Bruton,* 358 S.W.2d 207 (Tex.Civ.App.—El Paso 1962, writ dism'd). See 19 Tex.Jur.2d Deeds § 21, page 274. Concerning the rules governing the admissibility of such evidence when mental capacity of the party is in issue, Justice Greenhill, writing for the Texas Supreme Court, set forth the following general rule applicable to cases in which an individual's legal capacity to execute a deed or will is in question:

> "It is our conclusion that the jury in cases such as these should be given *ALL relevant and competent testimony* with regard to the mental condition of the testatrix; and in our opinion, competent evidence about her mental condition and mental ability, or lack of it which does not involve legal definitions, legal tests, or pure questions of law should be admitted. This is in accord with the modern trend in this field." (Citations omitted) (Emphasis added) *Carr v. Radkey,* 393 S.W.2d 806, 813 (Tex.Sup.1965).

In point of error six, appellant complains that the trial court erred by refusing to admit into evidence the testimony of Robin Moore. During the trial, appellant offered the testimony of Moore, a real estate appraiser and broker, to establish that "the true and correct value of the subject property at the time of the sale" (July 26, 1973) was substantially higher than the price specified in the contract of sale. Appellant contended that the disparity between the contract price and the actual value was relevant to Bach's state of mind and his capacity to know and to understand the extent of his property and the nature of the business transaction culminating in the real estate sales contract. Appellee, on the other hand, objected to this testimony on the ground that such value evidence was not relevant to the issue of Bach's mental capacity to contract; that the appellant had not proved fraud or misrepresentation by appellee; that appellant had not pled failure of consideration as a defense; and that if the trial court let in value evidence concerning the property in question, it would take a long time to complete the trial. In addition, the appellee argued that Moore's testimony would be highly prejudicial. The trial court sustained appellee's objection and refused to admit Moore's testimony.

The appellant then perfected his bill of exception. After being qualified as an expert appraiser and real estate broker, Moore stated in substance that he had been requested to make an appraisal of the property in question to ascertain the market value as it existed on July 26, 1973. Moore testified that he valued the land as of that date at an amount between $750.00 and $870.00 per acre, or around a middle value of $800.00 per acre based on comparable sales in the area at that time. Moore stated that his appraised value of the property would be more if there were producing oil wells or gas wells on the property. During the course of the trial, a copy of a bank deposit slip was introduced into evidence. This showed that a short time before the contract of sale in question was executed, Bach received a "shut-in" royalty payment. There was other evidence in the record which suggested that approximately two weeks after the contract was signed, certain

mineral operations commenced on the property.

█ It is generally stated that, in determining whether or not mental incapacity existed at the time of the making of the contract, the inequity or foolishness of the agreement is an important factor for the jury to consider. 10 Tex.Jur.2d, Cancellation of Instruments, § 9, p. 313 (1959).

█ Here the contract price ($400.00 per acre) was less than one-half of Moore's appraised price without consideration of the "shut-in" gas well which, according to Moore, would increase the value of the property even more. As our Supreme Court said in *Carr v. Radkey*, 393 S.W.2d 806, 813 (Tex.Sup.1965), ". . . *all* relevant and competent testimony with regard to the mental condition . . ." of the party in question should be admitted into evidence. A jury question on the issue of whether Bach possessed the requisite mental capacity to enter into the contract was properly before the court. The contract price as compared to the real value of the property was relevant. We hold that the trial court erred in excluding the proffered testimony of Moore. Considering the record as a whole, we are also of the opinion that the error was harmful. Because this evidence was excluded, appellant was precluded from fully developing facts tending to show that Bach may have entered into a foolish and grossly unequal contract. Rule 434, T.R.C.P. Appellant's point of error number six is sustained.

In point of error four, appellant asserts that the trial court committed reversible error by refusing to receive into evidence a copy of a note executed in the principal sum of $100,000.00 by the decedent and by refusing to allow testimony to the effect that the note was executed without any consideration. Appellant complains that the tendered note and testimony were relevant to the mental condition of the decedent and were offered to show that, at or near the time he executed the subject contract of sale, the decedent also executed a note which was not supported by consideration, thus demonstrating that the decedent was of unsound mind. Although the appellate record does not contain the note, which appellant sought to introduce, the proffered testimony of the administrator of the estate is preserved in a bill of exception.

█ As a general rule, evidence of prior actions, conduct, utterances, and transactions of a person whose mental capacity is in question is competent evidence and is admissible. *Miguez v. Miguez*, 221 S.W.2d 293, 295–96 (Tex.Civ.App.—Beaumont 1949, no writ). See *Carr v. Radkey*, 393 S.W.2d 806 (Tex.Sup.1965); *Buhidar v. Abernathy*, 541 S.W.2d 648, 651 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.). In this case, appellant sought to introduce testimony concerning lack of consideration to support the note not for the purpose of proving the non-enforceability of the note, but for the purpose of showing the circumstances of another transaction which occurred at or near the time of the execution of the contract in question. Appellant contends that this transaction would shed light on the decedent's mental capacity. We agree. The jury should have had the opportunity to consider the testimony of the administrator of the estate concerning his knowledge of the circumstances surrounding the execution of the note. See *I. C. T. Insurance Company v. Wineman*, 308 S.W.2d 549 (Tex.Civ.App.—El Paso 1957, writ ref'd n. r. e.). The exclusion of this evidence was harmful, particularly when we consider the entire record and the exclusion of the other relevant testimony discussed above. Accordingly, appellant's point of error number four is also sustained.

It is not necessary for us to consider appellant's other points of error as they are not likely to occur in another trial. The judgment of the trial court is reversed and the cause is remanded for a new trial.

YOUNG, J., not participating.