# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00247-CV

**Michael Rowland, Sr., Appellant**

**v.**

**Caroline Herren and The Office of the Attorney General of Texas, Appellees**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C2006-0028A, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Michael Rowland, Sr., appeals the district court's denial of his motion to vacate an agreed order in a child support enforcement proceeding. Finding the agreement to enter the order to be valid, we affirm the judgment of the district court.

Rowland and appellee Caroline Herren were divorced in 1989. There were three children of the marriage. The divorce decree ordered Rowland to pay child support in the amount of "$46.67 per child per week, for a combined total of $140.00 per week" until the youngest child, J.C.R., reached the age of eighteen.

On June 24, 2005, Herren filed a motion to enforce the child support order, and amended her motion on June 26, 2006. Herren sought enforcement by contempt as well as a judgment for arrearage in the amount of $91,899.29, attorneys' fees, and court costs. On October 30, 2006, the day Herren's motion was set to be heard, the parties participated in mediation. Although

no agreement was reached at mediation, the parties entered into a settlement agreement later that day and presented their agreement to the court. On the record, the parties confirmed the agreement, and the court approved it. Herren's counsel agreed to prepare the written memorialization of the agreement for entry by the court.

On December 11, 2006, Herren filed a motion to enter the written agreed order. On December 14, 2006, Rowland, who had secured new counsel since reaching the settlement agreement, responded by filing a motion to vacate and to set aside the agreed order, challenging its validity based on his own diminished capacity at the time of signing. He also asserted that the court had no jurisdiction to enter the agreed order, that his counsel failed to fully explain the agreement, and that the agreement was "against the great weight of the evidence" and "contrary to law." The next day, December 15, 2006, the district court signed the agreed order, which was later modified on February 5, 2007, to correct a clerical error. The agreed order held Rowland in contempt for failure to pay child support and granted judgment for back child support in the amount of $60,000 and for attorneys' fees in the amount of $7,500. Rowland's jail sentence of 180 days was suspended on the condition that he make specific scheduled payments toward the back child support owed.

On February 9, 2007, the Office of the Attorney General filed a lien on bank accounts it believed belonged to Rowland, including a lien on the bank account of Southland Fabs, Rowland's company. Rowland and Southland Fabs filed a joint motion to release the lien, which the district court heard and granted on February 15, 2007. On February 27, 2007, the Attorney General filed a plea in intervention, which it amended on March 23, 2007. Neither side moved to strike the

2

plea, the Attorney General participated in later proceedings, and Rowland does not challenge the Attorney's General's intervention on appeal.

The district court heard Rowland's motion to vacate in April 2007, and, on April 18, 2007, denied the motion. Rowland appeals. He raises nine issues, challenging the sufficiency of the evidence to support the agreement underlying the agreed order and its validity, the continuing validity of the arrearage judgment following the lien release, and the award of attorneys' fees. As resolution of each of these issues depends on the validity of the settlement agreement, we address this issue first.

Rowland argues that the settlement agreement is invalid because the evidence was insufficient to establish that he was competent to enter into the agreement. Specifically, Rowland challenges the district court's finding that he had the requisite mental capacity to enter into the contract at the time he signed it:

> The Court finds that Mr. Rowland was competent and had a rational understanding of the agreement he voluntarily entered into on October 30, 2006 before this Court, on the record, with his attorney present.

A trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence according to the same standards as jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In reviewing legal sufficiency, we view the evidence in the light most favorable to the court's finding and will overrule the challenge as long as the evidence offered to support the finding is more than a scintilla. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). In reviewing factual sufficiency, we consider and weigh all the evidence in the record and will

3

sustain the challenge only if the court's finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

When the issue of mental incapacity is raised, the burden of proof is on the party seeking to set aside the agreement to show that the person entering into the agreement did not understand the nature and consequences of his act at the time. *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969) (to have mental capacity to enter into a contract in Texas, a person must have "appreciated the effect of what she was doing and understood the nature and consequences of her acts and the business she was transacting"); *Bach v. Hudson*, 596 S.W.2d 673, 675-76 (Tex. Civ. App.—Corpus Christi 1980, no writ.). Mental capacity, or a lack thereof, may be shown by circumstantial evidence, including: (1) a person's outward conduct, "manifesting an inward and causing condition"; (2) any pre-existing external circumstances tending to produce a special mental condition; and (3) the prior or subsequent existence of a mental condition from which a person's mental capacity (or incapacity) at the time in question may be inferred. *See Bach*, 596 S.W.2d at 676. In general, the question of whether a person knows or understands the nature and consequences of his act at the time of the contract is a question of fact. *See Fox v. Lewis*, 344 S.W.2d 731, 739 (Tex. Civ. App.—Austin 1961, writ ref'd n.r.e.).

The evidence presented at the hearing on the motion to vacate included the testimony of the mediator, Rowland's son, Rowland's business partner, and the general manager of Rowland's business, as well as the testimony of both Rowland and Herren. Rowland presented evidence that he had suffered a stroke in April or May of 2006 and argued that it affected his mental capacity

on the day the settlement agreement was negotiated. Herren testified that, based on her knowledge of Rowland after fifteen years of marriage, she believed that he had a rational understanding of what he was doing at the time the parties signed the agreement and asked the court to approve it. Phyllis Offerman, the mediator, testified that, on the day of the mediation, the same day the agreement was signed, she had no concerns about Rowland's mental capacity or ability to understand—that he appeared to have a "sophisticated understanding" of the negotiations. According to Offerman, Rowland had participated fully in the settlement discussions and exhibited no physical manifestations of the stroke. Offerman further testified:

> If he had done anything that I had thought, you know, that we weren't on the same page communicating just because his voice was different, I felt that I was communicating with him well. If I had doubted in the least, I wouldn't have continued.

Rowland's son also testified, noting that his father had some physical problems after the stroke, but no diminished mental capacity. According to Rowland's son, even after the stroke, Rowland continued to run his business, including calculating bids and entering into complex negotiations. Rowland's son also observed Rowland make significant purchases after the stroke. Rowland testified that he continues to run the company, although he also relies on the advice and assistance of Michael Klingle, his business partner, and on Keith Davis, the general manager.

Michael Klingle, Rowland's business partner, testified that Rowland had not been the same after his stroke—that Rowland "has difficulty at times processing information and his memory isn't the same as it used to be." Although Klingle testified that he had assumed chief responsibility

5

for the finances of the business following Rowland's stroke, Klingle also testified that Rowland continues to run the day-to-day operations of the business, that he signs paychecks, and that Rowland, who owns seventy-five percent of the business, maintains final decision-making authority on all matters.

Keith Davis, the general manager of Southern Fab, testified that, after the stroke:

> He's not comprehending everything that's coming at him because it's coming so fast. You have to back him down and explain things a little more to him than what you would have to before he had the stroke.

Davis also testified that Rowland remains the "head honcho" and continues to run the company.

Although Rowland presented some evidence that, after the stroke, he had a more difficult time functioning, both cognitively and emotionally, there is no evidence that, at the time Rowland signed the agreement, he did not appreciate the effect of what he was doing or understand the nature and consequences of his acts. *See Mandell & Wright*, 441 S.W.2d at 845. Both Herren and Offerman, who were present during the negotiations that day, testified that Rowland appeared mentally capable, exhibiting a full understanding of the proceedings. Moreover, the record of the hearing indicates that Rowland understood the proceedings and willingly entered into the agreement. Rowland fully participated in the proceedings, responded appropriately when questioned, and, in response to the court's pronouncement that Rowland would be held in contempt of court and would receive a suspended sentence of 180 days in jail, responded: "Yes, sir. I understand it."

Although Rowland now focuses on his stress and frustration that day as the "core" issue, arguing that stressful situations severely compromised his cognitive functioning and his

6

ability to process information properly, it remains that there is no evidence that, on the day Rowland negotiated and signed the agreement, this stress impaired his mental capacity such that he did not appreciate the effect of what he was doing or understand the nature and consequences of his acts. *See id.* There was also ample evidence together with inferences to be drawn from the evidence that Rowland was competent and understood the nature and consequences of entering into the settlement agreement. Under both a legal or factual sufficiency standard of review, Rowland's challenge of the district court's finding that he was "competent and had a rational understanding of the agreement he voluntarily entered" fails. *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Dow Chem. Co.*, 46 S.W.3d at 242.

As a corollary to his lack of capacity argument, Rowland also argues that he was effectively under duress to sign the settlement agreement. Citing to the evidence that his stroke has left him unable to effectively handle stress and frustration—that he "locks up" or "shuts down" when under stress—and to evidence and testimony that he felt frustrated and stressed the day he signed the settlement agreement, Rowland argues that the stress and pressure he experienced that day amounted to duress. However, our review of the record shows that Rowland neither pleaded duress in his motion to vacate nor presented that point to the trial court. Rowland has, therefore, waived this point on appeal. *See* Tex. R. App. P. 33.1(a). Even if this point had not been waived, the record does not support the idea that Rowland was under duress. Rowland argues that, by advising Rowland that he could go to jail if he did not sign the agreement, Rowland's counsel was threatening to do something that she had no right to do, and that this establishes duress. *See*

7

*Rabe v. Dillard's, Inc.*, 214 S.W.3d 767, 769 (Tex. App.—Dallas 2007, no pet.).   However, Rowland's attorney was simply advising him that he could go to jail if the district court held him in contempt.  This advice was correct.  There is no evidence that Rowland's lawyer exerted any duress on Rowland.

Rowland also argues that the settlement agreement is invalid because, prior to the court's entering the amended agreement on February 5, 2007, Rowland withdrew his consent. The February 5, 2007 order, however, was issued to correct a clerical error in the October 30, 2006 agreed order.   As we have explained, Rowland knowingly and voluntarily consented to the October 30, 2006 agreed order.  Rowland had no power to unilaterally withdraw his agreement after the agreed order was approved by the court on the record on October 30, 2006, even if the order was later modified for error correction.

Rowland also argues that the order of contempt entered by the district court is void because it contains amounts of child support owed not only for J.C.R. but also for the other two children, who had both attained the age of eighteen before Herren filed her motion to enforce. Relying on and quoting from *Ex parte Rogers*, 820 S.W.2d 35, 38 (Tex. App.—Corpus Christi 1991) (orig. proceeding), Rowland contends that the order is void:  "If one punishment is assessed for multiple acts of contempt, and one of those acts is not punishable by contempt, the entire judgment is void."  However, as we have explained, whether the judgment of contempt here was based on one act or multiple acts, the judgment is valid, as Rowland freely and voluntarily agreed to it.

Rowland argues that the evidence is factually and legally insufficient to support the settlement agreement and that the settlement agreement is invalid because the district court had

no jurisdiction to hear or to rule on Herren's motion to enforce. The child support order provided for continued support payments until the youngest child, J.C.R., reached the age of eighteen and was no longer enrolled in an accredited school and working toward a diploma. According to Rowland, there is no evidence that J.C.R., who had attained the age of eighteen before Herren's motion to enforce was filed, was still enrolled in an accredited high school and working toward the acquisition of a diploma. However, when he agreed to the settlement agreement, Rowland also agreed to the jurisdictional facts. At the October 30, 2006 hearing, Rowland's counsel stated to the court that J.C.R. had "just graduated" in January 2006. Later in the hearing, the following exchange occurred between Rowland and his counsel:

> Counsel: Mike, you have been here present and you have heard everything that we've spoke [sic] to the Judge about and everything Ms. Herren has answered for her attorney. Do you agree with everything that has been said?
>
> Rowland: Yes.

Although Rowland is correct that jurisdiction cannot be conferred by agreement, *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993), where, as here, the underlying jurisdictional facts are disputed, those factual findings are reviewed for sufficiency of the evidence to support them, *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Here, Rowland agreed on the record to the disputed jurisdictional fact that J.C.R. did not "age out" until January 2006. As Herren filed her motion to enforce in June 2005, six months earlier, the district court had jurisdiction to hear and to rule on Herren's motion to enforce.

9

Rowland also argues that, even if J.C.R. did not graduate or "age out" until January 2006, the district court had no jurisdiction because a brief period of non-enrollment in 2004, after J.C.R.'s eighteenth birthday, permanently prevented the district court from assuming jurisdiction, even if J.C.R. reenrolled. The district court's findings of fact on this issue were:

> The Court finds that [J.C.R.] was enrolled in a program leading to a high school diploma.
>
> The Court finds that [J.C.R.] received her diploma on January 17, 2006.
>
> The Court finds that [J.C.R.] was classified as a special education student for the periods November 4, 2003-August 31, 2005.

The evidence in the record is both factually and legally sufficient to support the district court's findings. *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Dow Chem. Co.*, 46 S.W.3d at 242. Records from the school district show that J.C.R.'s periods of absence from school were due to her transferring in and out of a special education program. Rowland makes much of school district's use of the word "enrolled" in their records and the technical meaning attached to it. However, the evidence shows that, until she graduated in January 2006, J.C.R. was continually working toward her high school diploma. She was enrolled in school and attending classes, or she was enrolled in school but on vacation or absent due to illness, or she was enrolled in school but awaiting "in district" transfer into or out of a special education program. This evidence is sufficient to support the district court's findings that J.C.R. was enrolled in a program leading to a high school student, was classified as a special education student from November 4, 2003 through August 31, 2005, and received her diploma on January 17, 2006. These findings, and the evidence supporting

10

them, are sufficient to satisfy the requirements of the family code. *See* Tex. Fam. Code Ann. § 154.002 (West 2008) (requiring child support through high school graduation); *In the Interest of J.A.B.*, 13 S.W.3d 813, 816 (Tex. App.—Fort Worth 2000, no pet.) ("The obvious intent of the legislature, as we have pointed out, is to require parents to aid in the support of their child, even if that child is over eighteen years of age, as long as the child is participating in studies leading toward a high school diploma."). Accordingly, the order is supported by sufficient evidence, and the district court had jurisdiction to hear Herren's motion to enforce.

Rowland also argues that the settlement agreement is invalid because he received ineffective assistance of counsel. Specifically, Rowland asserts that his counsel was deficient in failing to raise the jurisdictional issue, in failing to assert that the divorce decree was ambiguous and not enforceable by contempt, and in failing to timely respond to discovery, which created pressure to sign the settlement agreement.

Although the doctrine of ineffective assistance of counsel is generally unavailable in civil matters, where, as here, the contemnor faces possible deprivation of his liberty in a contempt proceeding, he has a constitutional right to the assistance of counsel, regardless of whether the proceeding is civil or criminal in nature. *See Ex parte Walker*, 748 S.W.2d 21, 22 (Tex. App.—Dallas 1988) (orig. proceeding). To establish ineffective assistance, the complainant must first show that counsel's performance was deficient and, second, that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When reviewing a claim of ineffective assistance of counsel, we look to the totality of the representation and not to isolated instances of error or to a single portion of the trial. *Thompson v. State*, 9 S.W.3d 808,

11

813 (Tex. Crim. App. 1999). Appellate review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally deficient. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

First, as to Rowland's argument that his counsel failed to raise the jurisdictional issue, Rowland himself agreed on the record to the facts establishing the district court's jurisdiction. There is no evidence that Rowland disputed this fact at any time before he entered into the settlement agreement or that he provided his attorney with any contrary information or alerted her in any manner to the possibility that J.C.R. was not enrolled in an accredited high school degree program when Herren filed her motion to enforce.

Second, Rowland contends that his counsel was deficient in failing to assert that the divorce decree was ambiguous and not enforceable by contempt. Whether read as requiring a payment of $140.00 a week until J.C.R. turned eighteen—the interpretation advanced by Herren—or as requiring a payment of $46.67 per child still under the age of eighteen—the interpretation advanced by Rowland—the evidence is undisputed that Rowland had paid nothing toward his obligation. Thus, by either reading, he would have been subject to contempt proceedings.

Third, Rowland contends that counsel was deficient in failing to timely respond to discovery, thereby creating a situation in which Rowland argues he was essentially compelled to sign the settlement agreement. There is no evidence in the record, however—and Rowland points us to none—to show that, even if Rowland's counsel was at fault for failing to timely respond to

12

discovery, this failure caused Rowland to face jail time, when he otherwise would not have. Even if, as Rowland asserts, "he would not have felt so pressured in the mediation and subsequent settlement negotiations," there is no evidence to show that counsel's failure to respond to discovery gave Rowland no choice but to enter into a settlement agreement.

We find no evidence to support Rowland's contention that he was denied effective assistance of counsel. We, likewise, find no support for any of Rowland's attempts to invalidate the settlement agreement. Accordingly, we overrule each of these issues.

Rowland also argues that the district court's February 15, 2007 order releasing the Attorney General's lien on Rowland's and Southern Fab's bank accounts should have abrogated the underlying debt. The basis for the parties' motion to release lien was that the lien incorrectly recited the judgment, that the judgment was not yet final, and that procedural matters had not been properly complied with. In response to this motion, the district court conducted a hearing on February 15, 2007, and ordered the lien released. Rowland has cited no authority, and our search has revealed no authority, for the proposition that the release of a lien on these grounds entitles Rowland to an extinction of the underlying judgment against him. Accordingly, we overrule this issue.

In a final issue, Rowland argues that there is insufficient evidence to support the district court's attorneys' fees award in the amount of $18,000 following the motion to vacate, as well as the award of $7,500 that was part of the settlement agreement. As a general rule, the party seeking to recover attorneys' fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). Whether an award of attorneys' fees is reasonable and necessary is a fact question and is reviewed under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d

13

19, 21 (Tex. 1998). A trial court abuses its discretion by awarding fees when there is insufficient evidence that the fees were reasonable and necessary. *See id.*

As we have determined, the settlement agreement is valid and was voluntarily entered into by Rowland. Rowland cannot challenge the $7,500 awarded pursuant to that agreement. Although Rowland contends otherwise, the evidence establishes that the $18,000 awarded following the motion to vacate is in addition to the $7,500 awarded under the settlement agreement. In support of her request for these additional attorneys' fees, Herren's counsel testified that she has been licensed since May 1995 and that her hourly rate is $200.00, a reasonable and necessary rate for an attorney practicing family law in the area. She testified that she had spent over $19,000 worth of time on the case, including time in connection with motions for protective orders, special exceptions, a judgment nunc pro tunc, discovery, and a two-day trial. The only controverting evidence elicited by Rowland was that five of the hours included in the $19,000 were for attending the lien proceedings, which were initiated by the Attorney General. In response, Herren's counsel reduced her request to $18,000, the amount ultimately awarded her by the court. We find the uncontroverted evidence presented by Herren's counsel sufficient to support the district court's award of attorneys' fees. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 450 (Tex. App.—Austin 2006, pet. denied) ("Courts may award an amount of attorney's fees as a matter of law based on evidence that is not contradicted by any other witness or attendant circumstances, is clear, direct, positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it."). Accordingly, there was no abuse of discretion in the district court's award of attorneys' fees, and we overrule this issue.

14

Having overruled each of Rowland's issues, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
    Chief Justice Law not participating

Affirmed

Filed:   February 19, 2010