# SUPREME COURT OF TEXAS.

## TYLER TERM, 1874.

---

### J. W. Flanagan v. P. H. Pearson.

1. Practice.—In determining whether a judgment sought to be enjoined at suit of a discharged bankrupt was rendered for *fraud committed by the defendant*, it was improper to submit the matter to a jury. The question is one for the court, upon inspection of the record, including the pleadings.
2. Conclusiveness of judgment.—In an injunction suit to restrain proceedings under a judgment *for fraud in the defendant*, and which was pending on appeal while bankrupt proceedings were had, the court will not open the question of fraud.
3. Attorney and client.—The relation of attorney and client is that of trust, and a violation of duty by the attorney is an act done in a fiduciary capacity under the bankrupt law.
4. Bankruptcy does not suspend proceedings on appeal in the Supreme Court.
5. See case of judgment for a debt made in *fiduciary capacity*, and not discharged by proceedings in bankruptcy.

Appeal from Rusk. Tried below before the Hon. J. B. Williamson.

*M. W. Morris*, for appellant, cited Flanagan *v.* Cary, 37 Tex., 67; Bump on Bankruptcy, 530.

*Martin Casey*, for appellee, cited Elliott *v.* Mitchell, 28 Tex., 184; Bump on Bankruptcy, 391; Freeman *v.* Neyland, 23 Tex., 530.

Gould, Associate Justice.—The appellant brought this suit to enjoin the enforcement of a judgment rendered

1

against him on May 7th, 1867, and affirmed on appeal in this court on May 15th, 1869, the ground for the injunction being that, on the 1st day of October, 1868, he was adjudicated a bankrupt on his own petition, and on January 29th, 1870, was regularly discharged. Other matters, affecting the execution and levy only, were set up in the petition; but as they were settled in favor of appellant, it is not material to attend to them further. The answer to the petition alleged that the judgment sought to be enjoined was a debt created by the fraud, breach of trust, and embezzlement of the plaintiff, as an attorney and counselor at law, and was not a debt from which he could be discharged under the bankrupt law. Upon the trial, the court submitted special issues to the jury, who, in response to those issues, found, amongst other things, that the judgment was rendered for fraud committed by Flanagan, and also that he had, in fact, intended to commit a fraud. We think it was error to submit to the jury an issue as to whether the judgment was obtained for fraud or not. That question was to be determined by the court from an inspection of the record in the case, including the pleadings. Nor was it proper to submit to the jury the question whether Flanagan actually intended to defraud Pearson out of his certificate or not. We know of no authority for reopening issues settled in the original suit between the same parties. These issues, however, were proved against appellant, and the superfluous finding is no ground of error as to him.

The petition in the original suit alleged that, on the 8th of July, 1841, J. E. White conveyed to petitioner, Pearson, by title bond, 354 acres of his head-right certificate; that on March 28th, 1850, petitioner agreed with defendant, Flanagan, and Nathan G. Bagley, being licensed attorneys at law practicing in partnership under the style of Flanagan & Bogley, to convey to them one-third of said 354 acres of land, if they, the said Flanagan & Bagley, would locate

said land for petitioner, and obtain for him a good title to the same, or return to him said bond; that in pursuance of said contract, he delivered to them the title bond from White, and the said Flanagan & Bagley executed to him their written receipt, as follows:

" THE STATE OF TEXAS, }
  " *County of Rusk.* }

"Received of P. H. Pearson a bond from J. E. White to him for three hundred and fifty-four acres of land, which we agree and obligate to return to said Pearson, in case we fail to comply with a contract for locating and perfecting the title to the same.   This 28th day of March, A. D. 1850.

         " (Signed,)        FLANAGAN & BAGLEY."

The petition further states that, on the 3d day of August, 1852, the said Flanagan, intending to cheat, swindle, and defraud petitioner out of his right to said land and land certificate, contracted to sell the entire J. E. White league certificate to one Ussery, and afterwards made said Ussery a warranty deed to the entire certificate; that the entire certificate had been located and surveyed (making exhibit of various locations and field notes for Ussery) on land worth three dollars per acre; that said Flanagan by his said fraudulent acts disabled himself and the said Bagley from fulfilling their agreement, and that by said fraud he was damaged five thousand dollars; praying for vindictive damages, &c.

The bond of White to Pearson, made an exhibit to this petition, bound him in the sum of two thousand dollars to make to Pearson a good and sufficient title to 354 acres of land out of his certificate, so soon as he obtained a patent from the Government of Texas, reciting as follows: "Said White having sold to Alex. Jourdan one-third of a league of his head-right, and twelve hundred and ninety-nine acres to Dimes Reeves, which is to be located by said Reeves, and surveyed in one solid tract, together with the three hundred

and fifty-four acres above mentioned, forming a tract of 3,129 acres, the third of league sold to Jourdan is to be selected first from off one side or end of said tract, and then said Pearson is and shall have the first choice to select his 354 acres from either corner of the remaining tract of 1,653 acres in a square or oblong form." The consideration was stated to be one hundred and fifty dollars.

The answer of Flanagan to this original petition consisted of exceptions, a general denial, and pleas of limitation and prescription.

The charge of the court was to the effect that if Flanagan " had violated his duties or obligations to his principal by positive misconduct, by selling and converting to his own use, and as his own property, the portion of said certificate which the said title bond was intended to secure to plaintiff, you will find a verdict in favor of the plaintiff for the damages sustained by him for such misconduct or neglect of duty as such attorney and agent of plaintiff."

The jury brought in a verdict for plaintiff of $2,250. On a motion for a new trial being made, Pearson was required by the court to remit, and did remit, all except $1,000, for which amount judgment was rendered, and that judgment was, on appeal to this court, affirmed.

This statement of the pleadings and record shows that the course of action set up in the petition in that case was an alleged fraudulent breach of duty by Flanagan, as the employed attorney of Pearson, in converting to his own use the bond intrusted to him as such attorney. The judgment is a debt founded on this breach of duty in his fiduciary capacity as an attorney. For the purposes of this case the record is conclusive evidence that the debt evidenced by said judgment was created whilst Flanagan was acting in the character of an attorney by his misconduct as such. In the view which we take of it, it is not material to determine whether the record establishes a debt created by fraud or embezzlement within the meaning of the bank-

rupt act; for whether the breach of duty amounted to such fraud or embezzlement or not, we think that a debt growing out of the conversion by an attorney of his client's money or property, in his hands as such, both on principle and authority, is a debt created whilst acting in a fiduciary character. The case of Heffran *v.* Joyne, 39 Ind., 464, is in point, as to money collected by an attorney. The court decides that a discharge in bankruptcy is no bar to the collection of such a debt, and place it on the ground that an attorney acts in a fiduciary capacity. In White *v.* Plott, 5 Denio, 274, the same proposition is laid down as conceded. The relation of attorney and client is one of trust and confidence; and breaches of duty, such as the appropriation of money collected, or of papers intrusted to the attorney in the way of business, have always been punishable by the courts. (Bac. Abr., title, Attorney.) Such embezzlement by an attorney was excepted out of the English insolvent laws. (Id.)

Courts have differed as to whether the construction given to the words "fiduciary character," under the bankrupt law of 1841, is to be regarded as intended to be adopted by the use of the same words in the present law, as ably argued in Crown *v.* Costin, 104 Mass., 247, or, on the other hand, whether a change of meaning is not fairly inferable from the omission to specify " as executor, administrator, guardian, or trustee," as was done in the former law. (See Similken *v.* Booth, 4 Am. Rep., (47 Mo., 385,) 326 ; *In re* Seymour, 6 Int. Rev. Rec.; Treadwell *v.* Holloway, 46 Cal., 547.) As held in Chapman *v.* Forsyth, 2 How., 208, the words, " other fiduciary capacity," mean the same class of trusts as executors, administrators, guardians, and trustees, and we think the relation of attorney and client is nearly enough of that class to be within the spirit of that decision. For some purposes the relation of attorney and client is classed by courts of equity with those of trustee and *cestui que trust,* and guardian and ward. (Ad. Eq., 184.)

If it were not conclusively settled, so far as this case is concerned, by the judgment in the original suit, it might well be questioned whether the location of a land certificate is properly within the scope of an attorney's duties, even when undertaken as an attorney. It can hardly be doubted, however, that the undertaking to perfect the title to land is a legitimate professional contract. Especially was this so in this case, because of the complicated nature of Pearson's claim. He held only an obligation for title to be made when a much larger part of the certificate was located by Reeves. The perfection of his title was, under the circumstances, a proper subject of professional employment. But the plaintiff cannot reopen this question; nor the question whether Pearson was, in fact, by the conduct of plaintiff, left without remedy for the recovery of the land on which the certificate was located; nor yet the question whether the amount of the original judgment was not excessive, notwithstanding the remittitur. These questions do not enter into the case as presented to us.

But it seems to be contended that the affirmance of the judgment in this court, pending the proceedings in bankruptcy, and in the absence of any suggestion by defendant of his bankruptcy, was a nullity. We have not been referred to any decision going to that extent. The cases of Taylor *v.* Bennett, 38 Tex., 522, and Johnson *v.* Poage, decided by our predecessors, not yet reported, refer to the enforcement of liens in the courts of the State after bankruptcy, and hold that in such cases the State courts have no longer jurisdiction. They do not refer to cases excepted from the operation of a discharge, nor do they refer to cases pending in the appellate court. They were cases heard on appeal, and not cases attacked collaterally, and it is not clear that the court mean to hold more than that it is error to proceed in such cases after the institution of proceedings in bankruptcy. The State courts have often held, in regard to ordinary causes pending against the

bankrupt, it is not even error to proceed to final judgment, where no application for stay of proceedings is made by the bankrupt. (Stone *v.* Brookville National Bank, 39 Ind., 287; Bradford *v.* Rice, 102 Mass., 472.)

In Merritt *v.* Glidden, 39 Cal., 564, the court held the judgment appealed from to be a final judgment within the meaning of the bankrupt act. (See also O'Neil *v.* Dougherty, 46 Cal., 575.) The proceedings in the Supreme Court may be regarded as in the nature of a suit to test the correctness and validity of that judgment. (Id., and Gibbs *v.* Belcher, 30 Tex., 80. But see, *contra, In re* Metcalf, Bank. Reg. Supp., 43.) No method has been suggested by which a discharge in bankruptcy could be plead or contested in this court, and it would be useless even to stay the proceedings, as in the lower court, for the purpose of allowing it to be obtained and plead.

We hold that the affirmance of the judgment against Flanagan in this court was valid, and that the judgment is a debt created whilst acting in a fiduciary character, and is not within the operation of his discharge in bankruptcy.

The judgment is affirmed.

AFFIRMED.