**MANDELL & WRIGHT, Petitioners,**

v.

**Enola M. THOMAS, Respondent.**

**No. B-1214.**

Supreme Court of Texas.

April 16, 1969.

Rehearing Denied June 4, 1969.

Barrow, Bland & Rehmet, David Bland, Houston, for petitioners.

Mack H. Hannah, III, Port Arthur, Newton B. Schwartz, Houston, for respondent.

McGEE, Justice.

Enola M. Thomas filed suit to rescind a contingent fee contract employing the law partnership of Mandell & Wright to prosecute the claim arising out of the death of her husband. Mrs. Thomas alternatively sought a judgment declaring the contract null and void or that Mandell & Wright be limited to a recovery in quantum meruit for services performed prior to the notification of discharge. Mandell & Wright also sought a declaratory judgment that the contract vested them with a one-third interest in any cause of action for the death of Joseph Thomas and a one-third interest in the proceeds of any settlement of the death claim.

Both parties moved for summary judgment. The trial court overruled the motion filed by Mrs. Thomas and entered summary judgment in favor of Mandell & Wright. The First Court of Civil Appeals at Houston reversed the judgment of the trial court and remanded the cause for trial. 433 S.W.2d 219.

We will review the testimony from Mrs. Thomas' deposition before discussing the points of error raised by the parties.

Early on the morning of October 24, 1966 Mrs. Thomas heard that her husband, Joseph, who was an employee aboard the "Gulfstag" had lost his life when the vessel sank. Surviving Mr. Thomas were his wife and seven children, one of whom was serving in the Armed Forces overseas. About noon of the same day Johnson, of the National Maritime Union, and Wright called at her home. Thomas had been a member of this union. Wright was introduced as the attorney for the union and was recommended to Mrs. Thomas. There was very little conversation on this occasion. Mrs. Thomas stated that her son would be home on leave soon and that she would take no action until he arrived.

Three days later her son did arrive home on emergency leave. On October 27, 1966, Patton, another representative of the union, and Wright called at her home. Patton explained benefits which would be received from the union and assured her that she need not worry about them. Wright asked the names and ages of the children and

wrote them down. He told her that his fee would be one-third of the claim and related that he represented others; but, she said that she did not see their names. Wright handed the contract to her in the presence of Patton and her son. She glanced over the contract but did not remember reading it. She could not remember whether or not her son read the contract. Her son was present at this time. She acknowledged that she signed the contract of October 27, 1966. After she signed the contract she remembers Wright saying, "Now we are going to represent you folks."

On November 2, 1966 Mrs. Thomas called Mack Hannah III and asked if she could change lawyers and was advised: "That is your privilege." She then telephoned Mandell & Wright and told them that she did not want them to represent her. She then went to Mr. Hannah's office and he dictated a letter, which she signed, notifying Mandell & Wright that they had been discharged. She then signed a one-third contingent fee contract with Hannah, and he called in Newton Schwartz as co-counsel. No reason for the discharge was stated in the letter to Mandell & Wright. Later, in her deposition, Mrs. Thomas gave as her reason for discharging Mandell & Wright the fact that she wanted to be represented alone and not with a group.

In reversing the summary judgment, the Court of Civil Appeals held that material issues of fact were raised concerning the identity of the claim in which Mandell & Wright were assigned an interest. Mandell & Wright assign error to this ruling and contend that the contract described with sufficient certainty the only claim to be prosecuted as a result of the death of Thomas at sea. We sustain this contention.

The claim is described in the contract as follows: "Mandell & Wright, a law partnership, are hereby employed to represent the undersigned in the prosecution of the following claim: *Joseph Thomas (deceased husband) Gulfstag.* * * * That said attorneys are authorized to sue for and recover all damages and compensation to which the undersigned may be entitled * * *."

■ The contract sufficiently identifies the claim arising out of the death of Thomas, because the only cause of action which Mrs. Thomas and her children possessed as the result of the death of her husband at sea is defined by Federal Statutes. The cause of action for the death of Thomas at sea can be asserted only by virtue of the Jones Act, 46 U.S.C.A. § 688, or the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq. The Jones Act gives a cause of action to the "personal representative" of any seaman whose death is caused by personal injury in the course of his employment. The Death on the High Seas Act gives a cause of action to the "personal representative" of a person whose death is caused by wrongful act or negligence occurring on the high seas. Our State's Wrongful Death Act, as well as any common law remedy which Mrs. Thomas may have had for the death of her husband at sea, has been superseded by Federal Statute. Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1929).

■ We stress the fact that the death action is vested by statute in the "personal representative." The right of Mrs. Thomas, as the surviving wife, to qualify as "personal representative" was fixed at the time she signed the contract, and this right could not have been pre-empted by any other person without her consent. V.A. T.S. Probate Code, Sec. 77. In this case Mrs. Thomas has not waived her right.

■ The "personal representative" who asserts a cause of action under the Jones Act or the Death on the High Seas Act is not suing for the benefit of the decedent's estate or as a representative thereof, nor does any amount which the "personal representative" may recover become an asset of the estate. The Probate Court has no interest in either the claim or damages recovered thereunder. Petition of Southern Steamship Co., 135 F.Supp. 358 (D.Del.,

1955). The "personal representative" sues as trustee for the benefit of those for whom the statute authorizes recovery. Lindgren v. United States, supra; Hassan v. A. M. Landry & Son, Inc., 321 F.2d 570 (5th Cir., 1963); Stark v. Chicago, North Shore & Milwaukee Ry. Co., 203 F.2d 786 (7th Cir., 1953); Petition of Keystone Tankship Corporation, 237 F.Supp. 689 (W.D.Wash., 1965); Petition of Southern Steamship Co., 135 F.Supp. 358 (D.Del., 1935); Feliu v. Grace Line Inc., 97 F.Supp. 441 (S.D.N.Y., 1951); The Pan Two, 26 F.Supp. 990 (D.C.Md., 1939); Thornton v. Puget Sound Power & Light Co., 49 F.2d 347 (W.D.Wash., 1930).

The statutory beneficiaries in this case are the surviving wife and children. Wright recorded the names and ages of the children and then Mrs. Thomas signed the contract. We hold that under the undisputed facts of this case and the law applicable thereto, the claim in which Mandell & Wright were assigned an interest was identified and understood by the parties as a matter of law.

The Court of Civil Appeals reversed the summary judgment for the further reason that, in its opinion, the deposition testimony of Mrs. Thomas that she was "in shock" created a fact issue concerning her mental capacity at the time she signed the contract. Mandell & Wright contend that the summary judgment proof conclusively shows that Mrs. Thomas had the requisite mental capacity to execute the contract in question. This contention is sustained.

■ Mrs. Thomas had the mental capacity to contract if she appreciated the effect of what she was doing and understood the nature and consequences of her acts and the business she was transacting. Missouri-Pacific Ry. Co. v. Brazzil, 72 Tex. 233, 10 S.W. 403 (1888); 17 C.J.S. Contracts § 133(1)a; 13 Tex.Jur.2d, Contracts, § 10.

The record in this case conclusively demonstrates that Mrs. Thomas understood and agreed to the essential terms of the contract. Mrs. Thomas testified by deposition that she was "in shock" on October 24, 1966, which was the day she learned of her husband's death. That she was possibly "in shock" on that date is completely understandable and believable. But October 24, 1966 was not the date on which Mrs. Thomas signed the contract with Mandell & Wright. The contract was executed on October 27, 1966. Though Mrs. Thomas testified to being "in shock" on that date, her deposition testimony nevertheless conclusively shows that she understood the nature and consequences of her actions, for she in fact testified that on October 27, 1966 she did understand that she was employing lawyers to file suit for damages for the death of her husband and was agreeing to pay them one-third of any sum recovered. Her only complaint stated in the deposition was that she did not want to be represented in a group.

■ We hold that as a matter of law Mrs. Thomas possessed the mental capacity to contract at the time she executed the agreement with Mandell & Wright.

At the time Mrs. Thomas signed the contract in question, Mandell & Wright already represented another claimant by the name of James Hiott. The Court of Civil Appeals overruled the contention of Mrs. Thomas that a conflict of interest existed by reason of Mandell & Wright's representation of another claimant. We likewise overrule that contention and hold that as a matter of law, there was no conflict of interest at the time Mrs. Thomas signed the contract on October 27, 1966. While neither party has briefed the question of what effect such a conflict might have on the contractual rights and obligations of Mrs. Thomas, we think the question is immaterial in view of our holding under the record of this case that no conflict of interest existed between Mrs. Thomas and the other claimant. This is not to say that a conflict of interest could never arise in the representation of several claimants by a single attorney in a proceeding where liability is limited as provided in 46 U.S.C.A.

§ 183 et seq. The rights and obligations of the attorney in that situation will be considered when the question is presented for decision.

■ Both of the claimants represented by Mandell & Wright were asserting claims against the owners of the Gulfstag, a common defendant. But that fact, standing alone, could not possibly lead to the inference that their respective interests were adverse and hostile, and that is what is required before the interests can be said to conflict. 7 C.J.S. Attorney and Client § 47. Mrs. Thomas' attorneys contend, however, that at the time she signed the contract there existed the probability that the shipowners would file a petition for limitation of liability as authorized by 46 U.S.C.A. § 183 et seq., and that the limitation fund established in that proceeding would in all probability be inadequate to satisfy all the claims against the fund. Mrs. Thomas urges that the claimants' respective interests necessarily conflicted due to the possibility, if not probability, that they would be seeking satisfaction out of a limited fund.

A petition to limit liability has actually been filed by the owners of the Gulfstag in the United States District Court for the Eastern District of Texas. Wright knew, when Mrs. Thomas signed the contract, that such a petition would probably be filed and that the limitation fund might well be inadequate to satisfy the many claims which would be asserted against the fund. We nevertheless hold that in representing James Hiott and Mrs. Thomas, Mandell & Wright did not represent conflicting interests within the meaning of Texas Canon of Ethics Number Six.

■ If the limitation fund exceeds the aggregate amount of all claims which are and which may be asserted against it, there cannot possibly be conflicting interests among the claimants. On the other hand, if the district court determines that the fund is inadequate to pay the total amount of damages which may be awarded, then the court will enforce a concursus and re-

duce proportionately the amount awarded each claimant. 46 U.S.C.A. § 184, Hartford Accident & Indemnity Co. of Hartford v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1927); Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954); Petition of Texas Co., 213 F.2d 479 (2d Cir.1954); Petition of Trinidad Corporation, 229 F.2d 423 (2d Cir.1955).

We find no cases decisive of the exact point we are deciding here, but as illustrative of the cases which attest to the practice of multiple claimant representation, even when the limitation fund is inadequate to pay all the claims, we cite the case of Petition of Southern Steamship Company, 135 F.Supp. 358 (D.Del., 1955).

Since we have held that there was no conflict of interest at the time Mrs. Thomas signed the contract with Mandell & Wright, it is not necessary to discuss whether full disclosure of the conflict was made to Mrs. Thomas. It is, however, undisputed that Wright, at the time the contract was signed, told Mrs. Thomas that his firm was representing other claimants. Mrs. Thomas made no protest at that time, nor did she mention the firm's representation of Hiott at the time she actually discharged Mandell & Wright.

Mrs. Thomas contended in the Court of Civil Appeals, and renews the contention here, that the contract is void as being against public policy because it authorizes Mandell & Wright to compromise and settle the claim and to execute "* * * all necessary releases, receipts, acquittances, settlements discharges, notices or satisfaction of awards, judgments or recoveries of whatsoever character, and generally do all acts and things which in their judgment are essential to the handling of this matter."

■ This provision, which constitutes a general power of attorney with respect to the claim described in the contract, does not render the contract void. It simply accentuates the fiduciary relationship of at-

torney and client and places upon the attorney, who occupies the position of a trustee, the very highest duty to act in accordance with that relationship. A breach of that duty to act in the utmost good faith would not leave Mrs. Thomas without a remedy. Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962); Flanagan v. Pearson, 42 Tex. 1 (1874); Arrington v. Sneed, 18 Tex. 135 (1856); Bell v. Ramirez, 299 S.W. 655 (Tex.Civ.App., 1927, writ ref'd); Jinks v. Whitaker, 195 S.W.2d 814 (Tex.Civ. App., 1946, writ ref'd n. r. e).

 When, as in this case, an attorney has been expressly authorized to bind his client by a compromise or settlement of the claim, such a grant of power is valid in the absence of fraud of the attorney. Edge v. Business Men's Assurance Co. of America, 15 S.W.2d 44 (Tex.Civ.App., 1929, writ dism'd); 7 C.J.S. Attorney and Client § 105.

The summary judgment proof conclusively shows a complete lack of fraud or misrepresentation on the part of Mandell & Wright or the union representatives.

 We reject respondent's contention that Mandell & Wright's recovery should be limited to one of quantum meruit for the value of work performed between the date of employment and date of discharge. Her refusal to cooperate in their prosecution of the claim made it impossible for them to proceed further. In Texas, when the client, without good cause, discharges an attorney before he has completed his work, the attorney may recover on the contract for the amount of his compensation. Myers v. Crockett, 14 Tex. 257 (1855); White v. Burch, 19 S.W.2d 404 (Tex.Civ. App., 1929, writ ref'd); White v. Burch, 33 S.W.2d 512 (Tex.Civ.App., 1930, writ ref'd); Cottle County v. McClintock & Robertson, 150 S.W.2d 134 (Tex.Civ.App., 1941, writ dism'd, judgment correct).

 The trial court's judgment awarded Mandell & Wright an undivided one-third interest in " * * * all claims, ac-

tions, demands, or causes of action arising by operation of law for damages or other amounts due and owing to plaintiff, Mrs. Joseph (Enola M.) Thomas, or the Estate of Joseph Thomas, deceased, husband of plaintiff, because of the death of said Joseph Thomas." We hold that Mandell & Wright's contract embraces only the statutory claim arising out of the death of Thomas. This claim has been settled and the settlement fund is now on deposit with the federal district court in Beaumont in Civil Action Number 5343.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.