In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-349 CV


____________________



CLINT W. LEWIS AND CLINT W. LEWIS AND ASSOCIATES, Appellants



V.



EDWARD B. CHATELAIN, III, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-176,562






 OPINION


 This is a dispute between attorneys over attorneys' fees. The issue on appeal is
whether the trial court properly granted a motion for summary judgment. We hold that the
trial court properly interpreted the parties' agreement about dividing their fees, and therefore
we affirm the judgment. 



Factual Background


 Clint Lewis (Lewis) employed Edward B. Chatelain, III (Chatelain) as an attorney
between 1994 and December 2000. After Chatelain's employment with Lewis ended, several
of Lewis's clients decided to have Chatelain represent them in matters originally handled by
Lewis's firm. When no agreement was reached regarding the division of fees for cases that
had originally been handled by Lewis's office, Lewis filed an interpleader and declaratory
judgment suit against Chatelain. In 2002, Chatelain and Lewis settled that suit and executed
a Rule 11 Agreement, (1) which provided in pertinent part: "On all of the cases listed above,
[Lewis] is to receive 57 ½% of the fees earned, both now and in the future, and [Chatelain]
is to receive 42 ½% of said fees."

 In March 2003, injuries that Chatelain suffered in a motorcycle accident interrupted
his practice. Subsequently, Chatelain referred a personal injury suit that was covered by the
parties' Rule 11 Agreement to another law firm, Provost & Umphrey. In 2005, the referred
case settled, and its settlement generated a total of $160,000 in contingent attorneys' fees. 
Under the referral fee arrangement, Chatelain retained a right to "earn and receive 50% of
any contingency fees paid by [the client] upon recovery in the case."


 Unable to reach agreement with Lewis on the division of the fees from the underlying
personal injury lawsuit, Chatelain sought a declaratory judgment in February 2006 regarding
the division of the remaining $80,000.00 and claimed that Lewis breached the Rule 11
Agreement ("the attorneys' contract"). Chatelain subsequently placed the disputed fees of
$80,000.00 in the registry of the court, and the court ordered that the fees be deposited into
an interest-bearing account. Lewis answered Chatelain's petition and filed a general denial. 
Later, Lewis filed an amended answer that alleged Chatelain referred the case without
Lewis's knowledge or consent, and by doing so "violated the duty to bargain in good faith."

 On December 28, 2005, Lewis's attorney wrote to the Provost & Umphrey attorney
who handled the case to conclusion, stating: 


 Whatever the gross attorney fee, ½ may be disbursed to your law firm pursuant
to the referral agreement made between your firm and Mr. Chatelain. 


 . . . . 


 I will have more later after I consult further with Mr. Lewis, but I did want it
clear that in no way do we make any claim as to the 50% earned by your firm,
and that disbursal of same is agreeable to us; however, as to the remaining
50%, we are demanding that it stay in trust until agreements or orders are in
place.

 In April 2007, Chatelain filed a motion for summary judgment. He requested that the
court disburse 57.5% of the funds on deposit to Lewis and disburse the balance to him. 
Chatelain's motion for summary judgment was based on the attorneys' contract, and he
presented evidence that he and Lewis divided attorneys' fees in another case that was subject
to the attorneys' contract after deducting the fees received by the attorney to whom the case
had been referred.

 In response to Chatelain's motion, Lewis argued that he had an ownership interest in
the underlying case, which was referred to Provost & Umphrey without his consent. Lewis
asserted that Chatelain had diminished his interest in the attorneys' fee recovery to which he
would have otherwise been entitled. Lewis also testified through an affidavit that he was
unaware that another case "was referred out in a similar manner." Further, Lewis's response
to Chatelain's motion states that Lewis "does not contest the facts as stated by [Chatelain]
in his Motion for Summary Judgment." 

 The trial court granted Chatelain's motion and found that the attorneys' contract
controlled the division of fees. After finding that Chatelain "earned" a fee of $80,000.00 in
the referred case and determining that Lewis was not entitled to the attorneys' fees earned
by Provost & Umphrey, the trial court ordered the clerk to pay Lewis 57.5% of the balance
of the funds on deposit after subtracting attorneys' fees and costs. The trial court also
awarded Chatelain attorneys' fees and court costs for filing the interpleader, and ordered
those amounts, together with the remainder of the funds, paid to Chatelain. Lewis challenges
the trial court's summary judgment in one issue. He argues that a fact issue was raised by
the summary judgment evidence and the pleadings on file.

 Summary Judgment Evidence and Standards of Review


 Chatelain's motion for summary judgment is a traditional motion for summary
judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. A summary judgment
under this section "is appropriate when there is no genuine issue as to any material fact and
judgment should be granted in favor of the movant as a matter of law." Diversicare Gen.
Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005). In reviewing the evidence
presented, "we take as true all competent evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's favor." Id. 
In our review of a trial court's decision to grant a summary judgment, "we consider all
grounds presented to the trial court and preserved on appeal in the interest of judicial
economy." Id. We review the decision of the trial court under a de novo standard. Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

Discussion


 In the trial court, and on appeal, the parties do not assert that the attorneys' contract,
which settled their prior suit, was ambiguous. Chatelain contends the agreement
contemplated a division of the fees that he "earned," whereas Lewis contends that the
attorneys' contract "contemplated that [Chatelain] would finish the cases and his need to seek
outside counsel should not diminish the value of [Lewis's] interest."

 An executed Rule 11 agreement settling a lawsuit may be enforced "in the same
manner as any other written contract." Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a)
(Vernon 2005); see Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995). In interpreting
unambiguous contracts, the courts give effect to the parties' intention as expressed or as
apparent from the contract's language. City of Pinehurst v. Spooner Addition Water Co., 432
S.W.2d 515, 518 (Tex. 1968). Generally, when the parties do not define particular terms
used in their agreement, we give each word and phrase in the parties' agreement its plain,
grammatical meaning unless such meaning would defeat the parties' intent as reflected by
the entire agreement. See DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex.
1999); Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). We determine the
parties' intent from the language of the contract, and do not rely upon the unexpressed
subjective intent of one party, "'for it is objective, not subjective, intent that controls.'" 
Matagorda County Hosp. Dist. v. Burwell, 189 S.W.3d 738, 740 (Tex. 2006) (quoting City
of Pinehurst, 432 S.W.2d at 518). Also, the Supreme Court has stated that "a court should
construe a contract from a utilitarian standpoint, bearing in mind the particular business
activity sought to be served." Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565,
574 (Tex. 1996).

 Applying these rules of interpretation, we note that the attorneys' contract
contemplated the division of fees "earned." Webster's Dictionary defines "earn" as:

 a : to receive as equitable return for work done or services rendered : have
accredited to one as remuneration b : to come to be duly worthy of or entitled
to as remuneration for work or services <he has ~ed his promotion, but we
cannot give it to him now> c: to bring in by way of return - used of income-producing property <money in bonds may ~ less but it is more secure> <this
block of stocks should ~ $5000 a year>. 


Webster's Third New International Dictionary 714 (2002). Thus, "earned," as used
in the parties' agreement, incorporates the concept that the attorneys were dividing what
Chatelain would receive in return for the services he rendered. 

 When a contingency fee contract involves lawyers who are not in the same firm, the
Rules of Professional Conduct contemplate that the attorneys' fee is to be divided "in
proportion to the professional services performed by each lawyer [] or made between lawyers
who assume joint responsibility for the representation[.]" Tex. Disciplinary R. Prof'l
Conduct 1.04(f)(1)(i)-(ii), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G. app. A
(Vernon Supp. 2007). Thus, under the Rules of Professional Conduct, a contingency fee is
viewed as "earned" based upon either the attorney's work or the attorney's substantial
involvement in being jointly responsible for the matter. See id.

 Chatelain's summary judgment evidence included his affidavit, which stated that the
referral fee with Provost & Umphrey was "a customary and usual arrangement for referral
of a matter . . . to other counsel." Lewis's summary judgment evidence did not challenge the
reasonableness of the division of fees under Chatelain's referral fee arrangement, and he does
not contend that Chatelain in some manner "earned" a portion of the fees received by Provost
& Umphrey. Thus, there was no fact issue created by the summary judgment evidence with
respect to whether Chatelain "earned" a fee of $80,000.00 in the referred case. The trial
court divided the $80,000.00 paid into the court's registry based on the attorneys' contract. 
Thus, the issue is whether the attorneys' contract evidences the parties' intent to collect fees
that neither Chatelain or Lewis "earned." 

 While the Rules of Professional Conduct generally require that attorneys in separate
firms divide a contingent fee based upon their proportionate work or their proportionate
responsibility to the client, these same rules regarding attorneys and their former employees
do not require a similar proportionality in a division of fees. Tex. Disciplinary R. Prof'l
Conduct 1.04 (f), (h). Instead, Texas courts recognize that when an attorney departs from
an employment relationship, the respective attorneys may agree to a division of fees that is
not representative of the amount of effort that each has spent, or will spend, on the matter. 
See generally Baron v. Wells, Mauzy & Baab, Inc., 623 S.W.2d 457, 461-62 (Tex. App.-
Texarkana 1981, writ ref'd n.r.e.). 

 The attorneys' contract, in our opinion, is akin to a separation agreement. Thus, while
attorneys in a separation agreement are not subject to the proportionality of services required
under the Rules of Professional Conduct for contingency fees, Lewis's and Chatelain's
contract uses language that manifests an objective intent to divide "fees earned." In that
agreement, the attorneys divided "fees earned, both now and in the future . . . ." With respect
to the present fee, the trial court found that Chatelain "earned" a fee of $80,000.00 and that
Chatelain earned no fees on the matter "other than the $80,000.00 referral fee." When
interpreted against how attorneys "earn" contingency fees, the Lewis and Chatelain
settlement is not ambiguous. We find no error in the trial court's finding that Chatelain's
earned fee was $80,000.00, and that the attorneys' contract governed the division of
Chatelain's fee. 

 Lewis cites Mandell & Wright v. Thomas, 441 S.W.2d 841, 847 (Tex. 1969) as
authority for the proposition that he was entitled to his percentage of the $160,000.00 paid
by the client in attorney's fees. However, Thomas did not involve a contract dividing fees
between attorneys; instead, it resolved a disputed fee that a firm's client owed the firm under
a contingency fee contract. Id. at 843. Further, in Thomas, the firm's summary judgment
evidence favored the firm's contention that it had been discharged without good cause. Id.
at 847. Lewis did not file a claim against his former client, as was the case in Thomas. 
Lewis also did not file a claim against Provost & Umphrey. Lewis failed to assert or prove
that his former client did not have good cause to consent to the case's referral to Provost &
Umphrey. Thus, the issue before us does not concern a division of fees between a firm and
its client; rather, this case involves a division of fees between an employer and its former
employee. We conclude that Thomas does not support Lewis's contention that he is entitled
to more than the amount awarded by the trial court's order. 

Holding


 The trial court interpreted an unambiguous contract and divided the fees between the
two attorneys based upon their written agreement. We overrule Lewis's sole issue and affirm
the trial court's summary judgment order. (2) 

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice

 


Submitted on December 17, 2007

Opinion Delivered January 31, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Rule 11 of the Texas Rules of Civil Procedure requires that agreements touching
any pending suit must be in writing, signed and filed as part of the record, or made in open
court and entered of record. Lewis did not contend at trial, and does not contend on
appeal, that the Rule 11 Agreement was not filed or made in open court and entered of
record.
2. We decline to find that Lewis's appeal is frivolous, as requested by Chatelain. See
Tex. R. App. P. 45. While we do not agree with Lewis's interpretation of the Rule 11
Agreement, Chatelain does not cite controlling authority interpreting the term "fees earned." 
In the absence of such authority, we decline to hold that the appeal is frivolous.