In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00258-CV
_____

MAXIE SPROTT, VIDA R. SPROTT, AND
CENTER FOR WOMEN'S HEALTH AND BIRTHCARE, Appellants

V.

JENNIFER BOYD, Appellee

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. 23DCCV1572

## OPINION

In this interlocutory appeal, we decide whether the trial court improperly denied several healthcare providers' Motion to Dismiss a health care liability claim based on the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (requiring a court to grant a motion to dismiss if the claimant fails to file an expert report within the requisite period). The claimant, Jennifer Boyd, failed to file a report within the 120-day deadline and asserted that the parties' Rule

11 agreement extending the deadline to respond to certain written discovery requests likewise extended the deadline for her to file the Chapter 74 threshold expert report. *See id.* § 74.351(a) (requiring the filing of an expert report within 120 days of the filing of each defendant's original answer but allowing the parties to extend the deadline for serving the report by written agreement). In one issue, the healthcare providers, Maxie Sprott, M.D. ("Dr. Sprott"), Vida R. Sprott, RN, ("Nurse Sprott") and Center for Women's Health and Birthcare ("CWHBC") (collectively, "Appellants" or "Defendants") contend that Appellee Boyd failed to file the expert medical report by the requisite deadline, and it was not covered by the parties' Rule 11 agreement. *See id.* § 74.351(a), (b).

For the reasons explained below, we conclude that the trial court improperly denied the Appellants' Motion to Dismiss as to Dr. Sprott and Nurse Sprott where the parties' Rule 11 agreement did not explicitly extend the deadline to file an expert report under section 74.351. Appellants concede that the report was timely as to CWHBC. Thus, we affirm the trial court's Order as to CWHBC, but we reverse the trial court's Order as to Dr. Sprott and Nurse Sprott and remand to the trial court to enter an order dismissing Boyd's claims against them with prejudice, and to award reasonable attorney's fees and taxable court costs. *See id.* § 74.351(b).

2

## I. Background[1]

In June 2021, Boyd presented to CWHBC for routine prenatal care; her obstetrician and gynecologist was Dr. Sprott, and she saw Nurse Sprott during her pregnancy for "check-ins." Dr. Sprott and Nurse Sprott worked for CWHBC. Boyd alleges that on October 19, 2021, at thirty-nine weeks gestation and while receiving routine follow-up care, she was diagnosed with preeclampsia, so Nurse Sprott sent her to Christus Southeast Texas Hospital for further evaluation.[2] That same day, a physician at Christus admitted Boyd to the hospital and sent her to labor and delivery where she received medications to induce contractions. Boyd stayed overnight at Christus for evaluation, and the next day, Dr. Sprott examined her; she was discharged and told to return to Christus on October 25, 2021, for an induction.

Instead, Boyd returned to Christus the same day in active labor; "[h]er membrane had ruptured, she was leaking amniotic fluid, and she was having consistent contractions[,]" and "was dilated 2 centimeters at that time." She was again admitted to the hospital and "grew increasingly uncomfortable" as the Christus nursing staff "failed to fully examine her cervix after several hours of labor" and speculated she was only two centimeters effaced. She alleges the nurse failed to call Dr. Sprott to update him on her progress, and Dr. Sprott did not arrive until just after

---

[1]We describe background facts as alleged in the parties' pleadings.
[2]Although Boyd sued Christus, it is not a party to this appeal.

delivery. Dr. Sprott then took over to deliver Boyd's placenta. As Dr. Sprott removed the placenta, the umbilical cord broke, "as the placenta had been shredded into pieces . . . causing massive hemorrhaging[,]" and Boyd passed out. Boyd required five blood transfusions. Several days after delivery and continued blood loss, Dr. Sprott performed a surgical procedure to remove the remaining parts of the placenta from her uterus.

Boyd alleges that she was discharged on October 23, 2021, but continued bleeding heavily and discharging "pieces of placenta" for six weeks after delivery. A month later, after experiencing the same issues, Dr. Sprott referred her for an ultrasound, which showed "retained products of conception" ("RPOC") and was given oral medications to help with the symptoms. When Boyd returned to CWHBC for her six-week follow up with Dr. Sprott, she continued bleeding heavily, so Dr. Sprott performed a second D&C in December.

In October 2023, Boyd sued Dr. Sprott, Nurse Sprott, CWHBC, and Christus. Boyd alleges that Dr. Sprott was negligent in "failing to properly diagnose her with preeclampsia and[ ] other complications encountered during delivery and failing to properly and completely remove her placenta after delivery[]" and alleges that CWHBC is vicariously liable for Dr. Sprott's negligence. On November 13, 2023, Dr. Sprott and Nurse Sprott filed their Original Answer, asserting a general denial.

4

CWHBC filed its Original Answer on December 22, 2023, also asserting a general denial.

The parties began exchanging discovery, which included Appellants answering Boyd's written discovery requests. Then, on January 12, 2024, Appellants propounded Request for Production and Interrogatories to Boyd. On February 5, 2024, Boyd's attorney requested a thirty-day extension of time "to provide you with our responses to your requests for Interrogatories and Requests for Production we received on January 12, 2024," which made the written discovery responses due on March 12, 2024. Opposing counsel agreed to the extension via email. On March 12, 2024, Boyd's attorney requested an extension of two more days, making Boyd's written discovery responses due on March 14, 2024. To confirm their agreement, a paralegal for Appellants' trial counsel sent the following email, "Please allow this email to serve as a Rule 11 extending Plaintiff's deadline to respond to discovery until Thursday, March 14, 2024." The emails did not mention the 120-day threshold expert report deadline under section 74.351. On March 14, 2024, Boyd served her responses to the discovery requests, and included in the responses was "a purported Chapter 74 expert report" prepared by David N. Jackson, M.D.

On April 4, 2024, Appellants filed their Motion to Dismiss and Objections to the Sufficiency of the Expert Report. In the Motion to Dismiss, Appellants argue that Boyd was required to serve an expert report with curriculum vitae upon each

defendant within 120 days of the defendant filing an answer. They contend, among other things, that Dr. Sprott and Nurse Sprott filed their Answer on November 13, 2023, and the deadline to serve the Chapter 74 expert report on those defendants was March 12, 2024, but Boyd did not file Dr. Jackson's expert report until March 14, 2024, two days after the deadline. They contend that as to Dr. Sprott and Nurse Sprott, "the Court must enter an order dismissing Plaintiff's claims against Defendants and an award of reasonable attorney's fees and costs of court pursuant to Section 74.351(b) of the Texas Civil Practice and Remedies Code." They also argue that since the claims against CWHBC "arise solely out of vicarious liability" for Dr. Sprott's and Nurse Sprott's alleged acts and omissions, it was entitled to dismissal also. Alternatively, Appellants contend that even if Dr. Jackson's report was timely, it was insufficient to meet Chapter 74's requirements and they objected to the report on several grounds.[3]

On May 3, 2024, Boyd responded by filing her "Memorandum in Opposition to [Defendants'] Motion to Dismiss and Objections to the Sufficiency of Plaintiff's Expert Report." Among other things, Boyd notes that Defendants propounded a Request for Production to her that asked for

> each and every study, report, data compilation, journal, book, treatise, article, or other piece of medical or dental literature or reference material upon which you intend to rely in prosecution of your claims

---

[3]We do not detail these objections, as they are unnecessary to the resolution of this appeal. *See* Tex. R. App. P. 47.1.

against the defendants, and/or you intend to offer in evidence and/or upon which you intend to examine any witness,

in addition to "[a]ny videotapes, audiotapes, tangible items, correspondence, writings, physical models, compilation of data or other material prepared in connection with this case created by or reviewed by an expert witness that will be called as a witness to testify in this case on behalf of the plaintiff." She also states that Defendants propounded an Interrogatory that asked her to identify

any and all persons you communicated (oral, written, electronic, recorded) with from June 7, 2021 to October 5, 2022 regarding the incidents made basis to this suit or your claims in the case, including but not limited to, interactions with healthcare providers, your physical condition, our medical status, any alleged injuries, your state of min[d], you[r] ability to urinate, etc . . .

She contends in her Memorandum in Opposition that discovery is stayed in medical malpractice cases until a claimant has served an expert report, and the Sprott Defendants violated the discovery stay by propounding discovery requests to her. Nevertheless, Boyd acknowledges that Defendants' engaging in "premature discovery" would not constitute a waiver of the 120-day requirement.

Boyd asserts that she obtained a Rule 11 agreement extending her deadline to provide written discovery responses, which she argues encompassed filing her Chapter 74 report. She contends that the courts should apply contract principles in determining whether the parties entered into an agreement to extend the 120-day

7

deadline. Boyd argues the courts must ascertain and give effect to the parties' intentions as expressed in the written agreement.

On June 13, 2024, Appellants filed their "Reply to Plaintiff's Memorandum in Opposition to [Defendants'] Motion to Dismiss and Objections to the Sufficiency of Plaintiff's Expert Report." Among other things, they argue that the Rule 11 agreement only covered responses to the discovery named and it was not an extension of the statutorily required report. Defendants contend that there is no ambiguity in the parties' Rule 11 agreement, as Boyd requested an extension to respond to Interrogatories and Request for Production only, and the extension was limited to those responses. They assert that Boyd never asked to extend the deadline to serve the Chapter 74 expert report nor was an extension granted.

The trial court held a hearing on Defendants' Motion to Dismiss where the parties reiterated the arguments outlined above. At the hearing, Defendants argued that the Rule 11 covered only the discovery requests specified, and the Chapter 74 expert report was not mentioned. They asserted that for the Rule 11 to cover the Chapter 74 expert report, it needed to say so. Defendants also noted the expert report under 74.351 is separate from the discovery rules, and Defendants cannot reference the Chapter 74 report during the case. Plaintiff's counsel argued that it was "reasonable" for him to "assume" that discovery as mentioned in the Rule 11 agreement included these expert reports. Trial court denied the Motion to Dismiss,

noting that the Defendants were not prejudiced by this, "I don't think the legislature meant . . . two days and you have a Rule 11 agreement that may contemplate; it may not," but according to the trial court Plaintiff's counsel believed the Rule 11 Agreement extended the Chapter 74 report deadline.

## II. Standard of Review

We review a trial court's determination on the adequacy of an expert report under section 74.351 for an abuse of discretion. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). Under an abuse of discretion standard, the appellate court defers to the trial court's factual determinations if evidence supports them, but it reviews a trial court's legal determinations de novo. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). However, "[w]hether the statute permits additional time beyond the 120–day deadline or is unconstitutional, as applied, are legal questions." *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts, so a trial court's clear failure to analyze or correctly apply the law to the facts constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "Where, as here, trial court has no discretion in determining what the law is, which law governs, or how to apply the law, the standard of review is the same, regardless of whether it is described as an abuse of discretion or *de novo.*" *Schmidt v. Dubose*, 259 S.W.3d 213, 215–16 (Tex. App.—Beaumont 2008, no pet.). When the claimant fails to serve the threshold

9

expert report within the deadline, absent a "written agreement of the affected parties[]" extending the deadline, dismissal is mandatory, and the trial court has no discretion but to dismiss the plaintiff's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b); *see also Ortiz v. St. Teresa Nursing and Rehab. Ctr., LLC*, 579 S.W.3d 696, 703 (Tex. App.—El Paso 2019, pet. denied).

### III. Analysis

Texas Civil Practice and Remedies Code section 74.351 addresses the serving of threshold mandatory expert reports in health care liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Spectrum Healthcare Res., Inc. v. McDaniel*, 306 S.W.3d 249, 250 (Tex. 2010) (noting that plaintiff serving an expert medical report on the defendant within the requisite timeframe is a "threshold requirement" in a healthcare liability lawsuit).

> [A] claimant shall, not later than the 120th day after the date each defendant's original answer is filed or a later date required under Section 74.353, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If a claimant fails to serve the requisite report within the timeframe specified in subsection 74.351(a), upon a

10

defendant's motion, the trial court "shall . . . enter an order that" "awards" the defendant "reasonable attorney's fees and costs of court" and "dismisses the claim . . . with prejudice." *Id.* § 74.351(b).

In this case, the Sprott Defendants moved to dismiss, because Boyd failed to serve an expert report within 120 days after they filed their Original Answer and argue the parties' Rule 11 agreement did not constitute a written agreement to extend the deadline under section 74.351(a), so the trial court erred in denying their Motion to Dismiss. Boyd contends that the parties' Rule 11 agreement extending her deadline to respond to Interrogatories and Request for Production included extending the deadline for her to serve her threshold expert report, although no express reference is made in the Rulle 11 agreement to section 74.351 or to the threshold expert report. Several considerations lead us to the conclusion that the parties' Rule 11 agreement here did not constitute a "written agreement" under section 74.351(a) to extend the deadline for Boyd to file her threshold expert medical report. These considerations include three Texas Supreme Court opinions and general principles of contract interpretation.

## A. *Spectrum Healthcare Res., Inc. v. McDaniel*

The Texas Supreme Court has addressed the extension of the deadline to serve a threshold expert medical report under section 74.351 in the context of an agreed docket control order. *See Spectrum Healthcare*, 306 S.W.3d at 250. Yet neither the

11

Texas Supreme Court nor this Court has squarely addressed whether a Rule 11 agreement extending the deadline to respond to written discovery but that fails to expressly mention Chapter 74's threshold medical report constitutes a "written agreement of the parties" to extend that deadline under section 74.351(a). In *Spectrum Healthcare*, the plaintiff argued that the parties' agreed docket control order extending the general discovery deadline to produce expert reports constituted a "written agreement of the parties, in accordance with section 74.351(a) of the Texas Civil Practice and Remedies Code" that likewise extended the deadline to file the threshold expert report. *See id.* The order at issue in *Spectrum Healthcare*, however, made no mention of the section 74.351 expert report deadline. *See id.* The Texas Supreme Court held "that an agreement of the parties that is intended to extend the statutorily mandated 120–day expert report deadline must explicitly state that the agreement is for that purpose." *Id.*

In reaching its conclusion in *Spectrum Healthcare*, the Court recognized, "that section 74.351(a) does not require the express mention of section 74.351's threshold expert reports in parties' written agreements." *Id.* at 253 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)). That said, the Court offered three reasons that compelled the conclusion that an agreed docket control order must explicitly reference threshold reports if it is to be an agreement extending that deadline. *See id.* at 253–54.

First, the Court noted that the threshold report under 74.351 "has a unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports[,]" and that it serves as a "substantive hurdle for frivolous medical liability suits before litigation gets underway." *Id.* at 253 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s)) (noting discovery being stayed until threshold reports are filed). With this first reason, the Court explained that along with this, one example of threshold expert medical reports being treated differently include "that a defendant may not use or even refer to the report for any purpose unless it is first used by the plaintiff." *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(k), (t)). The Court reasoned that construing a docket control order as establishing a deadline for serving a 74.351 report the same way as any testifying expert report, absent any reference "to section 74.351's requirements, would eviscerate the statutory purpose of treating the threshold expert report differently." *Id.*

Second, the *Spectrum Healthcare* Court reasoned that "the interplay between docket control orders and the Texas Rules of Civil Procedure governing the required disclosure or protection from disclosure of certain experts and their reports demonstrates" the difficulty of entering a docket control order that would extend the section 74.351 threshold report deadline absent "an explicit reference to that specific deadline." *Id.* (citing Tex. R. Civ. P. 192.7(c), (d)) (discussing prior version of discovery rules). The Court then explained the difference between how the Rules of

13

Civil Procedure and chapter 74 treat experts. *See id.* at 253–54. The Rules of Civil Procedure always allow for the discovery of a testifying expert's report, but a retained consulting-only expert's report is generally not discoverable. *See id.* (discussing Tex. R. Civ. P. 192.3(e)). In contrast, "[s]ection 74.351 makes clear that threshold expert reports fall into neither category[,]" as they must be produced to the defendant, but generally they are inadmissible and cannot be used in trial or any other proceeding. *Id.* (citation omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(k); *but see id.* § 74.351(t) (allowing exception for defendant's use if plaintiff uses a threshold expert report first).

We find this second reason compelling in the context of Rule 11 agreements extending the deadline to respond to written discovery responses that request information regarding experts and their reports. Given the mandatory and threshold nature of a chapter 74 report's disclosure, although usually generated by a retained expert, it is hard to imagine a scenario where one could extend the deadline to respond to written discovery seeking discoverable information about retained experts without expressly delineating the extension encompasses chapter 74 expert reports, since a) their production is required by section 74.351 rather than the Texas Rules of Civil Procedure, and b) despite their production, they cannot be used for any purpose by a defendant unless first used by the plaintiff.

Third and finally, in *Spectrum Healthcare*, the Court reasoned "that the ubiquity of agreed docket control orders militates the adoption of a simple standard for extending the threshold expert report deadline that litigants can easily meet and courts can readily apply." *Id.* at 254. We also find *Spectrum Healthcare's* third reason applicable to Rule 11 agreements, since they are also routinely used in Texas trial courts to allow parties to manage discovery and to provide and adjust deadlines. *See* Tex. R. Civ. P. 11; *see also Spectrum Healthcare*, 306 S.W.3d at 254. Requiring courts to scrutinize Rule 11 agreements "or gather additional evidence of the parties' intent to extend chapter 74's threshold expert report deadline along with the suit's unrelated discovery deadlines is impractical." *Spectrum Healthcare*, 306 S.W.3d at 254. Like an agreed docket control order, such would defeat the purpose of permitting parties to reach a discovery agreement in the first place. *See id.*

**B.** ***Crosstex Energy Servs., L.P. v. Pro Plus, Inc.***

Texas Supreme Court later applied *Spectrum Healthcare's* holding and rationale in *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, which involved a certificate of merit under Texas Civil Practice and Remedies Code section 150.002. *See* 430 S.W.3d 384, 386, 395 (Tex. 2014); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 150.002. In *Crosstex*, among other things, the Court addressed whether a Rule 11 agreement and the docket control order extended the deadline for filing a certificate of merit. *See Crosstex*, 430 S.W.3d at 395. In that case, Pro Plus's answer

15

included requests for disclosure under Rule 194.2, which includes expert information. *See id.* (discussing former Texas Rule of Civil Procedure 194.2). The docket control order provided deadlines for designating those experts. *See id.* Crosstex argued the docket control order on Rule 194.2 experts was broad enough to encompass the section 150.002 certificate of merit; therefore, they contended that the parties' subsequent Rule 11 agreement extending the deadline for Rule 194.2 disclosures, delayed the section 150.002 certificate of merit requirement. *See id.* The Court noted that in *Spectrum Healthcare*, it narrowly read the scope of the agreed docket control order on the designation of experts and that an agreed order "dealing with expert report deadlines does not impact the separate section 74.351 requirement *unless* it is specifically mentioned in the agreed order." *Id.* The Court explained that since the docket control order in *Crosstex* likewise did not mention the separate certificate of written merit requirements under section 150.002, and "*McDaniel* limits the purview of the docket control order, . . . and the Rule 11 agreement merely provided dates for the order, the Rule 11 agreement did not operate to postpone the filing requirement[]" of the certificate of merit. *See id.* In *Crosstex*, the Court looked at the Rule 11 agreement in conjunction with the docket control order, and squarely rejected the argument that the parties extended the deadline absent mention of the specific certificate of merit requirement and reiterated its holding in *Spectrum Healthcare*. *See id.* This seemingly broadened the

16

reach of the holding to actions involving section 150.002 where the parties employed a docket control order coupled with a Rule 11 agreement.

## C. *Shinogle v. Whitlock*

In *Shinogle v. Whitlock*, the Texas Supreme Court reaffirmed its holdings in *Spectrum* and *Crosstex*. *See* 596 S.W.3d 772, 776 (Tex. 2020). The Court applied its reasoning to the threshold expert report requirement in a sport shooting range case. *See id.* at 775–76 (citing Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a)). *Shinogle* again involved the parties' agreed scheduling order. *See id.* at 776. The Court again concluded that because "the parties' agreed scheduling order did not explicitly reference section 128.053 or its 90-day expert report deadline[,]" it was "insufficient to meet the explicit reference standard applied in *Spectrum Healthcare* and *Crosstex*." *Id.* We conclude the same reasoning applies here. The Rule 11 Agreement the parties reached regarding written discovery did not include any reference to the statutorily required Chapter 74 report and it did not extend the 120-day deadline.

## D. Application of General Contract Principles

Boyd urges us to apply general principles of contract construction to the Rule 11 Agreement. "Litigants' Rule 11 agreements are contracts relating to litigation, and thus we construe them under the same rules as a contract." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (per curiam) (citations omitted). "We do not give a Rule 11 agreement greater

effect than the parties intended." *Id.* at 561–62 (citing *Austin v. Austin*, 603 S.W.2d 204, 207 (Tex. 1980)). If a contract can be given a certain or definite legal meaning or interpretation, it is unambiguous, and we will construe it as a matter of law. *See id.*; *see also Coker v. Coker*,650 S.W.2d 391, 393 (Tex. 1983).

"To be effective, a Rule 11 agreement must consist of 'a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement.'" *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561 (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)). The Texas Supreme Court has held that a series of letters between the parties can be a sufficient Rule 11 agreement, and our sister courts have concluded that a "series of e-mails" established an agreement between the parties. *See, e.g.*, *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 692 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (addressing emails); *see also Shamrock Psychiatric Clinic*, 540 S.W.3d at 561 (noting same and addressing series of letters as Rule 11 agreement). Here, the alleged agreement was made via email, was in writing, signed, and filed with the court, as required by Rule 11. *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 561; *see also* Tex. R. Civ. P. 11.

When construing a contract, a court's primary concern is discerning the parties' true intentions as expressed by the contract. *See Coker*, 650 S.W.2d at 393; *see also Lewis v. Chatelain*, 245 S.W.3d 641, 644 (Tex. App.—Beaumont 2008, pet.

18

denied) (stating same in context of Rule 11 settlement agreement). We determine the parties' intent from the contract language and do not rely on the unexpressed subjective intent of one party, "'for it is objective, not subjective, intent that controls.'" *Lewis*, 245 S.W.3d at 644 (quoting *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006)). When interpreting a contract, we examine the entire agreement to harmonize and give effect to all contract provisions so that none are rendered meaningless. *See MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "[A] court should construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *see also Lewis*, 245 S.W.3d at 644.

Appellants assert that the Rule 11 agreement extending Boyd's deadline to respond to Interrogatories and Request for Production clearly did not encompass the section 74.351 threshold report. They argue that the language of the Rule 11 agreement "concerned only Appellee's deadline relating to "Appellants' 'Interrogatories and Request for Production received on January 12, 2024.'" Appellants also contend that there was no explicit language in the Rule 11 agreement addressing the 120-day deadline.

Boyd argues we should ascertain the parties' intent as manifested in their written agreement and that based on the substance of the information sought (i.e.,

19

expert reports) by the Interrogatories and Request for Production, "discovery" should be read to include the Chapter 74 report. Failing that, she contends that a reasonable interpretation of "discovery" in the context of this agreement would include the reports, thus the agreement is ambiguous.

We agree with Appellant and reject both of Boyd's arguments for the reasons explained below.

First, there is no language in the agreement manifesting such an intent. *See Coker*, 650 S.W.2d at 393; *Lewis*, 245 S.W.3d at 644. Absent express language in the parties' written agreement manifesting such an intent to extend the 120-day deadline to serve the threshold expert report, we decline to give their Rule 11 agreement greater effect than they intended. *See Shamrock Psychiatric Clinic.*, 540 S.W.3d at 560–61.

Second, we examine the entire agreement in an effort to harmonize it, so nothing is rendered meaningless. *See MCI Telecomms. Corp.*, 995 S.W.2d at 652. The series of emails comprising the agreement show that Boyd asked for an extension "to provide you with our responses to your requests for Interrogatories and Requests for Production we received on January 12, 2024[.]" Based on Boyd's initial request, opposing counsel's subsequent emails confirming they agreed to extend "Plaintiff's deadline to respond to discovery[,]" indicate that the "discovery" referenced was limited to "Interrogatories and Requests for Production." As we have

20

already explained, a party is obligated to serve a threshold expert report under Chapter 74 independent from written discovery requests or responses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Determining the parties' intent from the contract language and not relying on Boyd's unexpressed subjective intent, we conclude the Rule 11 agreement did not extend the 120-day deadline for Boyd to serve her section 74.351 report absent language manifesting that intent. *See Coker*, 650 S.W.2d at 393; *Lewis*, 245 S.W.3d at 644; *see also Shamrock Psychiatric Clinic*, 540 S.W.3d at 561–62 (noting courts will not give a Rule 11 agreement greater effect than the parties intended).

### E. Holding

Applying *Spectrum Healthcare*, *Crosstex*, and *Shinogle*, as well as contract interpretation principles, we hold that the Rule 11 Agreement at issue did not extend the 120-day deadline to file threshold expert reports under 74.351. *See* Tex Civ. Prac. & Rem. Code Ann. § 74.351(a); *see also Shinogle*, 596 S.W.3d at 776, *Crosstex*, 430 S.W.3d at 395; *Spectrum Healthcare*, 306 S.W.3d at 250. Since Boyd failed to timely serve her threshold expert report under section 74.351, the trial court had no discretion but to dismiss her claims against Dr. Sprott and Nurse Sprott. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b); *see also Ortiz*, 579 S.W.3d at 703. We sustain Appellants' sole issue.

## IV. Conclusion

Having sustained Appellants' issue, we reverse the trial court's Order denying the Motion to Dismiss as to Dr. Sprott and Nurse Sprott and remand the matter for the trial court to enter an order dismissing Boyd's claims against them with prejudice and to award reasonable attorney's fees and taxable court costs. Since Appellants concede that Boyd timely served a threshold expert report on CWHBC, we affirm the trial court's Order as to CWHBC.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on April 28, 2025
Opinion Delivered July 31, 2025

Before Golemon, C.J., Wright and Chambers, JJ.